**In re VICTORY CONSTRUCTION CO., INC., Debtor.**

**John H. HADLEY et al., Plaintiff,**

**v.**

**VICTORY CONSTRUCTION CO., INC., et al., Defendant.**

Bankruptcy No. LA–80–07936–RO.
Adv. No. LA–80–213–KO

United States Bankruptcy Court, C. D. California.

Feb. 23, 1981.

William C. Moritz, Los Angeles, Cal., for plaintiff.

Gilbert Robinson, Los Angeles, Cal., for defendant Victory Construction Co., Inc.

ROBERT L. ORDIN, Bankruptcy Judge.

On January 21, 1981, this court filed its "Memorandum Opinion on Complaint to Vacate Stay for Cause (Lack of Good Faith of the Debtor in Filing its Petition Under Chapter 11)". In that opinion, 9 B.R. 549, the court held that (i) the "good faith" of the debtor is an implicit prerequisite to the filing or continuation of a proceeding under Chapter 11 of the Code; [1] and (ii) the debtor's "lack of good faith" in filing a case under Chapter 11 is "cause", independent of the existence or lack of adequate protection, to vacate the automatic stay under § 362(d)(1). [2] Accordingly, the automatic stay was terminated. [3]

The debtor filed timely notice of appeal and now moves to stay Hadley's right to foreclose pending the appeal. [4] A hearing

1. Opinion, page 558.

2. Opinion, page 560.

3. Opinion, page 565.

4. While the January 26, 1981 opinion vacated the automatic stay as to Hadley, Green, and Decorative Carpets, the debtor seeks to stay that order only as to Hadley. No stay of the rights of Green or Decorative Carpets to pro-

was held on debtor's request for a stay on February 20, 1981. The debtor appeared by Fred Roven, and its counsel, Gilbert Robinson. John H. Hadley appeared by his attorney, William C. Moritz. Green appeared through his attorney, Mason Brown.[5]

Debtor's request for stay is based upon Bankruptcy Rule 805, which authorizes the trial court to:

> suspend or order the continuation of proceedings or make any other appropriate order during the pendency of an appeal *upon such terms as will protect the rights of all parties in interest.*[6] (Emphasis added)

In support of its request for a stay, the debtor contends:

### 1. *Irreparable harm to debtor*

Failure to grant the stay will result in irreparable harm to the debtor. A foreclosure sale by Hadley will result in a forfeiture of the debtor's interest in the real property. As a result, the debtor will lose all chance of reorganization, realizing equity in the real property, and confirming a plan of arrangement. No plan of arrangement can be proposed or consummated unless the debtor retains its rights and interests in the real estate.

### 2. *Significance of the issues on appeal*

The issues presented on this appeal are of great importance in the bankruptcy field and a decision by an appellate court on the "good faith" issues dealt with by the trial court will have far-reaching effect on the reorganization process under the Code.

### 3. *Lack of prejudice to Hadley*

Hadley will not be prejudiced by a stay on appeal. Mere delay from the passage of time is of little significance to Hadley, compared to the irreparable harm which will occur to the debtor if a stay is not granted. The harm resulting from such delay, if any, is purely economic and can be eliminated by imposing appropriate financial conditions on the stay.

### 4. *The prospect of success on appeal*

The trial court's opinion, dealing with matters of first impression and for which there is no appellate case authority, must be regarded as having "broached new territory."[7]

> Accordingly, there is no reason to assume that the appellate court will necessarily follow Bankruptcy Judge Ordin's analysis of the law. Therefore, appellant's chances of success are equally as good as those of any of the appellee's."[8]

In response, Hadley urges the following:

### a. *Conduct of Victory.*

The facts found by the trial court preclude Victory's right to a stay because the stay would accomplish the very purpose found by the trial court to constitute lack of "good faith"; that is, the use of the bankruptcy process (including the appellate function) to protect and preserve existing low-interest liens on property as a means of financing its acquisition with a minimum of front money cash.

### b. *The harm to Victory.*

Victory has placed itself in a position where any harm it suffers is the result of its own deliberate choice. Victory cannot

---

ceed under the January 26, 1981 order is sought or dealt with herein.

**5.** At the beginning of the hearing, counsel stipulated that (i) the court could consider, for the purpose of this hearing, all oral and documentary evidence received at the trial on the request for relief from the automatic stay, and (ii) no sale would be held by Hadley for a period of 14 days from the date of this order so that the debtor could seek the further relief contemplated by Rule 805.

**6.** Part VIII of the Rules of Bankruptcy Procedure is expressly made applicable to appeals to the Appellate Panel in this Circuit by local Bankruptcy Rule 8001, effective June 15, 1980.

**7.** Debtor's Memorandum in Support of Stay, page 10, lines 24 and 25.

**8.** Debtor's Memorandum in Support of Stay, p. 10, line 27, and p. 11, line 2.

complain of irreparable damage or injury from a course of conduct it has deliberately and knowingly pursued.

### c. *The harm to Hadley.*

Hadley contends [9] that he has sustained a loss as a result of the automatic stay [10] equal at least to the return available at market interest rates on his investment in the property. He asserts that the foreclosure sale set for August 12, 1980 would have permitted effective use of the realizable proceeds from that sale, or the interest in the property derived from that sale, at market rates of return. His declaration asserts that the available rate of return to him is between one percent under prime, and 40 percent per annum. He bases this on his existing and immediate experience as a real estate investor. It should be noted that Hadley's lien dates from February 8, 1978, and that by its terms he was entitled to monthly interest payments of eight percent per annum, with a balloon payment of principal eight years later. He has received no interest payments, and foreclosure has been prevented by successive automatic stays resulting from the Leslie Linder's London Club bankruptcy, and the Victory bankruptcy. His right to proceed with foreclosure sale on August 12, 1980, was only obtained after successfully litigating his right to foreclose in the state court proceedings brought by Victory to enjoin foreclosure. During all this time, he has been precluded from resort to the collateral and the use of that collateral or its proceeds in his business activities as a real estate investor. Further denial of his potential in this area effectively deprives him of market rate returns on an investment of substantial proportions.

### THE STAY PENDING APPEAL

It is clear that denial of the stay pending appeal in this case will effectively eliminate Victory's potential for reorganization. No authority is cited by Hadley to support an order which will have that result, and effectively deny Victory's right to appeal the trial court's decision. The right to an effective appeal is as significant and vital to a litigant as the right to a fair and impartial trial in the first instance. The Rules relating to appeal are wholly consistent with liberal exercise of discretion by the trial court to facilitate and encourage resort to appellate process to vindicate the claims and contentions of the parties litigant. As Victory contends, the issues raised and determined by the trial court in this case may have far reaching effects on the reorganization process under Chapter 11. To deny Victory the opportunity to contest these issues before an appellate tribunal would be an effective denial of rights to which every litigant should be entitled under the circumstances here presented. The protection of Hadley's rights and interests should not be accomplished at the expense of denying Victory an effective appeal. Hadley can be protected by the imposition of fair and reasonable conditions on the stay, as provided in Rule 805.

### CONDITIONS TO THE STAY

Rule 805 empowers the trial court to grant the stay

> upon such terms as will protect the rights of all parties in interest.

By its terms, the rule contemplates the protection of the rights of both appellant and respondent. Counsel cite no authorities which define or delineate the standards or principles to which the court may look for guidance in fashioning *terms* which "protect the rights" of the parties. However, the provisions of the Code dealing with relief from the automatic stay and the *terms* upon which that stay can be continued in effect may assist in conceptualizing the problem posed in applying Rule 805 to the case at bar.

The stay contemplated by Rule 805 is similar to the stay resulting from § 362, in that both may prevent enforcement of liens on the debtor's property. In order to

---

**9.** Hadley's declaration, filed in opposition to the request for stay.

**10.** The case was filed August 11, 1980.

continue the § 362 stay over objection of a creditor, "adequate protection" must be provided. That "protection" is intended to prevent "decrease in the value of" the secured creditor's interest in the property [11] as a result of the stay. Is the fixing of "terms as will protect the rights of all parties in interest" as a condition to granting a stay under Rule 805 not similar to fixing adequate protection to protect the interests of secured creditors as a condition to continuing the stay under § 362? *Terms* which protect the secured party whose right to foreclose is stayed pending appeal have much in common with *terms* defining adequate protection of the secured creditor's interest in property when foreclosure is stayed under § 362. The essence of the protection under Rule 805, like the protection under § 361, is the maintenance of *status quo*: the avoidance of impairment, erosion, or diminution of the property rights and interests of the parties stayed, i. e., decrease in the value of the interests affected.

How does one measure and protect against decrease in the value of the property rights or interests pending appeal? There are several possibilities.

(i) One could measure the decrease by the depreciation in the market value of the collateral;

(ii) The decrease could be measured by the loss of income from the collateral; and that loss of income could be equated to the interest rate contracted for by the parties, or to the interest rate prevalent in "the market."

(iii) One could attempt a formula which takes all of the foregoing into account.

(iv) The protection to be afforded could take the form of periodic money payments;

(v) Or a bond;

(vi) Or both a bond and payments.

(vii) Provisions related to taxes, insurance, and default of senior liens could also be provided.

Obviously, this list is not exclusive; the potential here is limited only by the ingenuity and creativity of imaginative and industrious lawyers.

Hadley asserts that the issuance of a stay will cause erosion, diminution, and impairment of his position unless it is conditioned upon: (i) monthly payments which cure the defaults occurring on and after August 12, 1980 (the date fixed for the sale); and (ii) interest payments on his investment at a rate equivalent to that which he could obtain in "the market"; and (iii) a bond to protect against depreciation in the value of his interest in the subject property. He suggests a bond of $1,500,000.

Victory urges that Hadley is only entitled to and will be amply protected by payments equal to interest at the rate contracted for—eight percent. Victory argues that (i) Hadley bargained for eight percent interest, and to give him a return in excess of eight percent is to rewrite the loan, and impose a penalty on Victory's right to a stay pending appeal; and (ii) the "terms" referred to in Rule 805 do not contemplate a "profit" to the respondent on appeal. Protection against loss, impairment or erosion is one thing; "profit" is a different matter altogether.[12]

Hadley's lien is, and at all times since its creation has been, junior to the first and second liens of record. The prospect of depreciation in value of property to the disadvantage of junior lienholders is an economic fact of life. To the extent that such depreciation occurred prior to the inception of the Chapter 11 case, it is beyond the scope of any "protection" contemplated by the Code.[13] While the evidence in this case justifies Hadley's concern that senior inter-

---

**11.** Section 361(1), (2), and (3).

**12.** At oral argument, Victory acknowledged the propriety of other terms and conditions of the stay; but with respect to loss from failure to effect foreclosure, Victory insists that eight percent is all that Hadley should receive.

**13.** "Adequate protection" reaches "decrease in value" which results from *post filing phenomena.*

ests may encroach on the realizable value of the property and jeopardize his ability to cash out in the event of foreclosure by senior interests, there is no evidence of deterioration in the value of his position since the filing of the case (apart from his continued loss of income). Nor does the record support a finding that the subject property is depreciating in value, or that market conditions are likely to result in any decrease in its value pending appeal.

■ On the other hand, Hadley's plea for money payments as a means of avoiding erosion, diminution or impairment of his interests pending appeal is entirely justified. Under the circumstances here presented, the court should measure the potential for decrease in Hadley's position pending appeal by the loss of income from his investment, and fashion protection against such loss in terms of periodic money payments.

The debtor's reliance on the contract rate is an attempt to burn the candle at both ends. Since acquiring the property in May 1980, the debtor has never observed nor attempted to perform in accordance with the terms of the contract. Now, when the prime rate hovers around 19 percent, and faced with imminent foreclosure, the debtor concedes that the contract rate is fair and reasonable and opts to return to the protection of interest rates contracted for in 1978. This is consistent with the debtor's conduct throughout this transaction, and is another example of the debtor's attempt to preserve low interest loans in place through use of the bankruptcy process. To permit the debtor to stay foreclosure and commence making payments of interest at eight percent (in February of 1981) under the circumstances here presented, is to permit the debtor to retain the fruits and benefits of a transaction entered into in the manner described in the trial court's opinion, and secure the benefits for which the debtor contended unsuccessfully at the trial.

Under these circumstances, Hadley is entitled to payments during the continuation of the appeal and as a condition of the stay which equate to and protect against loss measured by market rate of interest on his investment in the collateral, which the court finds in this case to be 18 percent per annum.

Interest at the "market rate" in this case does not create a "profit" for the secured party, but constitutes a fair and reasonable approximation of the loss which will otherwise accrue to present property rights and interests from the passage of time incident to the appeal.

## CONCLUSIONS

1. The debtor is granted a stay against the execution by John H. Hadley of the order of January 26, 1981, vacating the automatic stay, upon the terms and conditions hereinafter set forth; and

2. Said stay shall continue only so long as the debtor complies with each, every, and all of the following conditions:

(a) The debtor pays, prior to default, all sums which accrue or become payable on account of real property taxes on said real property from and after the date of this order;

(b) The debtor pays, prior to default, all sums due or payable on account of all liens on said real property senior to the lien of Hadley, including by way of example and not limitation, the following:

—the lien in favor of California Federal Savings and Loan Association; and

—the lien in favor of Japan California Bank.

(c) The debtor maintains fully paid fire insurance on works of improvement located on said real property in an amount sufficient to insure the interest of Hadley therein, and evidence of such insurance is furnished forthwith to counsel for Hadley.

(d) The debtor pays to Hadley interest on Hadley's lien, computed at the rate of 18 percent per annum, on $1,354,056.04, which interest shall be payable monthly on the first day of each and every month.

Should any of the foregoing conditions not be fulfilled promptly as provided herein, this stay will be vacated forthwith, upon application by Hadley.

3. This court, pursuant to stipulation of counsel at oral argument on the motion to stay, retains jurisdiction for the purpose of modifying or amending this order on the basis of new and different circumstances occurring subsequent to this date; such retention of jurisdiction to end when the appellate panel makes a ruling dispositive of the appeal now pending before it.

4. For the purpose of the record, it should be noted that at oral argument on this motion, it was stipulated between counsel for the debtor, Hadley, and Green, that a typographical error appears at page 550. of the court's order of January 26, 1981, in that Green's mechanic's lien is therein described as $576,714.74 whereas the correct and proper figure should be and is $476,-714.74, and that said judgment should be deemed modified to indicate the correct figure.

SO ORDERED.