**In re PUNTA GORDA ASSOCIATES, Debtor.**

**Bankruptcy No. 92–578–9P1.**

United States Bankruptcy Court, M.D. Florida, Ft. Myers Division.

July 6, 1992.

See also 137 B.R. 535.

Jeffrey A. Aman, Tampa, Fla., for debtor.

---

L. James Hinson, Orlando, Fla., for F.D.I.C.

Sara Kistler, Asst. U.S. Trustee.

## ORDER ON MOTION TO DISMISS

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 11 case and the matter under consideration is a Motion to Dismiss this case for cause under § 1112(b) of the Bankruptcy Code filed by the Federal Deposit Insurance Corporation (FDIC). It is the contention of FDIC that this case was filed in bad faith and therefore should be dismissed. The facts that are relevant to a resolution of this matter may be summarized as follows.

The Debtor is a New York limited partnership whose single asset on the date of filing of the Petition was a long-term ground lease on a parcel of real property located in Charlotte County, Florida, owned by Wilkins–Parnell Partnership (Wilkins). This land was originally leased by Wilkins to Western Inns, Inc., (Western), which in turn assigned the lease to the Debtor. Wilkins constructed a hotel on the property, and in conjunction with the construction of the hotel, executed and delivered a mortgage to Interfirst Bank of Houston, N.A., (Interfirst) as security for payment of a promissory note in the amount of $2,300,-000.00.

First Republic Houston, N.A. (First Republic Bank) was the successor in interest to Interfirst. The FDIC then was appointed receiver for First Republic Bank, and subsequently assigned the assets of First Republic Bank to NCNB Texas. Thereafter the assets were reassigned to the FDIC.

Before the Debtor filed its voluntary petition, the FDIC initiated a mortgage foreclosure action in the Circuit Court in Charlotte County, Florida, and obtained a Final Judgment of Foreclosure on December 13, 1991, which was entered nunc pro tunc as of December 2, 1991. The Complaint for Foreclosure named several defendants including the Debtor. The Final Judgment of Foreclosure included in the property foreclosed upon all rents, profits and revenues from the property and provided that the FDIC holds a lien superior to any claim of, among others, the Debtor.

On November 13, 1991, Troy Parnell, successor in interest to Wilkins–Parnell under the ground lease, Western Inns, and the Debtor entered into an Amendment to Ground Lease which reduced the Debtor's rent under the ground lease from approximately $20,000.00 to $100.00 per month. It should be noted that the Debtor entered into this Amendment shortly before the FDIC obtained its Final Judgment. It is also significant that Parnell is President of Ozark of Florida, Inc., which is the "advisory" general partner of the Debtor.

The Debtor filed its voluntary Petition on January 17, 1992, the day of the scheduled foreclosure sale. The Debtor's Schedule D of Creditors Holding Secured Claims indicates that the Debtor has two secured creditors: the FDIC and Western Inns, Inc. Despite what is stated on the Debtor's Schedules, the Debtor has no liability to the FDIC because it was not a party to the note and mortgage transaction.

It should be noted that the Debtor did not file a Motion to Assume the ground lease until April 30, 1992, the day after the hearing on the Motion under consideration. On May 1, 1992, the Debtor filed a "Waiver of 11 U.S.C. § 365(d)(4) and Novation of Ground Lease," which states that Troy Parnell agreed to the Debtor's assumption of the ground lease even though no timely motion to assume the lease was filed as required by 11 U.S.C. § 365(d)(4). The document also stated that Parnell and the Debtor agreed to a novation of the ground lease "in consideration for Lessee's future performance under the ground lease, as amended, and payment of past due rents."

In addition to the ground lease, the Debtor owned a small amount of personal property used in connection with the hotel operation on the date of filing. The Debtor has 40 unsecured creditors and owes these creditors a total of $44,548.17. $28,115.27 of this total represents sales and real estate taxes. The Debtor has nine employees whose jobs are to serve as front desk clerks and as maids.

Based on these facts, FDIC contends that this case was filed in bad faith and therefore should be dismissed for cause pursuant to § 1112(b) of the Bankruptcy Code.

Unlike the Bankruptcy Act of 1898, §§ 141–145, the Bankruptcy Code does not require an initial showing by the Debtor that the Petition was filed in good faith. Notwithstanding, it is now established beyond peradventure that the court may dismiss a Chapter 11 case for cause if the court finds that the Petition was filed in "bad faith." *In re Phoenix Piccadilly, Ltd.,* 849 F.2d 1393 (11th Cir.1988); *In re Albany Partners, Ltd.,* 749 F.2d 670 (11th Cir.1984).

The term "bad faith" is not defined by the Bankruptcy Code, and there is no single fact, the presence or absence of which compels the finding of bad faith. Courts have traditionally considered the totality of circumstances surrounding the case when considering a Motion to Dismiss a Chapter 11 case for bad faith filing. *In re Little Creek Development Co.,* 779 F.2d 1068, 1073 (5th Cir.1986); *In re Victory Construction Co.,* 9 B.R. 549, 564 (Bankr. C.D.Cal.1981), *modified,* 9 B.R. 570, *vacated as moot,* 37 B.R. 222 (9th Cir. BAP 1984).

Basically, the courts have focused on the Debtor's intent to use the reorganization chapter, i.e., was it used for the purpose for which it was intended by Congress; that is, to salvage meaningful economic value. This in turn was construed to mean that the Debtor had a realistic expectation to achieve a legitimate goal—either to actually reorganize its financial affairs or effectuate an orderly liquidation of its assets in order to satisfy in full, if possible, or at least a partial satisfaction of the legitimate claims of creditors.

In this connection the courts traditionally considered the following factors:

(1) the lack of a "realistic possibility of an effective reorganization;" (2) the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights; (3) the debtor has only one asset; (4) the debtor has few unsecured creditors whose claims are small in relation to the claims of the secured creditors; (5) the debtor has few, if any, employees; (6) the debtor's major asset is the subject of a foreclosure action; (7) the debtor's financial problem is basically a two-party dispute; (8) the debtor appears to be merely a "shell" corporation; and (9) the debtor is seeking "to create and organize a new business rather than to reorganize or rehabilitate an existing enterprise." *In re Albany Partners, Ltd., supra; Little Creek, supra; In re Natural Land Corp.,* 825 F.2d 296 (11th Cir.1987); *In re Phoenix Piccadilly, Ltd., supra; In re South County Realty, Inc., II,* 69 B.R. 611 (Bankr. M.D.Fla.1987).

Most single asset cases involve real property which is owned by the debtor. *See In re North Redington Beach Associates, Ltd.,* 91 B.R. 166 (Bankr.M.D.Fla.1988). If the only asset owned by the debtor is income-producing and is sufficient to maintain the operation, and the debtor has a realistic expectation that the asset will generate sufficient income in the future, the fact that this is the debtor's sole asset is without any great significance. Equally, if it appears that the debtor has sufficient equity in the single asset which could be used to obtain refinancing or to produce funds through a sale which could fund a plan of reorganization, the fact that it is a single-asset case is also without significance.

Of course, this is not the case in the present instance. The Debtor owns no real property. The Debtor's only asset is the long term ground lease, and no order has been entered yet permitting the Debtor to assume this lease. Further, the total obligations of the Debtor are small in comparison to the total amount owed under the FDIC's Final Judgment, and consist mainly of property and sales taxes. The remainder of the Debtor's unsecured creditors appear to be trade creditors, and none of them are pressing the Debtor for collection. In fact, it appears that the Debtor has been paying its bills in the regular course of business. Moreover, this Court is satisfied that the Petition was filed for the sole purpose of stopping FDIC's foreclosure

sale of the property. While this alone would not *per se* indicate that the Petition was filed in bad faith, *In re Krilich & Soltesa/Brandt Development Co.*, 87 B.R. 178 (Bankr.M.D.Fla.1988), the totality of the circumstances convince this court that this case was filed in bad faith. For this reason, it is appropriate to dismiss this Chapter 11 case for cause.

Accordingly, it is

ORDERED, ADJUDGED AND DE-CREED that the Motion to Dismiss be, and the same is hereby, granted, and this Chapter 11 case is hereby dismissed with prejudice.

DONE AND ORDERED.