### In re LANDINGS ASSOCIATES LIMITED PARTNERSHIP, Debtor.

**Bankruptcy No. 92–8357–8P1.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Sept. 9, 1992.

B. Gray Gibbs, Tampa, Fla., for debtor.

Douglas P. McClurg, Tampa, Fla., for movant.

## ORDER ON MOTION TO DISMISS CHAPTER 11 CASE

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 11 case filed by Landings Associates Limited Partnership (Debtor). The Debtor's right to seek rehabilitation under this Chapter is challenged by Allstate Life Insurance Company (Allstate). The Motion to Dismiss this Chapter 11 case is based on the contention of Allstate that this Chapter 11 Petition was filed in bad faith which in turn would warrant a dismissal for "cause" pursuant to § 1112(b) or, in the alternative, that dismissal is proper because this Debtor cannot effectuate a plan of reorganization which, in turn, would also warrant a dismissal pursuant to § 1112(b)(2) of the Bankruptcy Code.

The facts which appear from the record and were established at the final evidentiary hearing are basically without dispute and are as follows.

The Debtor is a limited partnership. Its sole asset is a commercial office complex comprised of four buildings located in Sarasota, Florida. The Debtor is engaged in business only to the extent that it manages the property involved in this Chapter 11 case. Allstate is the holder of a first mortgage lien on the subject property. Allstate claims that its prepetition indebtedness is slightly less than $12,000,000.00. Although the Debtor does not concede that this is correct, it agrees that the prepetition debt owed to Allstate is at least $10,660,-500.00. According to the Debtor's Schedules, the property has a market value of $11,000,000.00. Regardless whose calculation of Allstate's prepetition debt is correct, there is minimal or no equity in the property. Interest continues to accrue at the rate of $4,434.72 per diem. Thus, even if there is a small amount of equity in the property, it is quickly eroding. The mortgage loan matures by its own terms in June of 1994.

It is without dispute that the Debtor defaulted on the mortgage loan by failing to make the regular monthly payment due on March 1, 1992, and all subsequent payments. Shortly after the initial default, Allstate accelerated all the amounts due on the mortgage loan, and pursuant to *Fla. Stat.* § 697.07 and an assignment of rents, demanded that the Debtor turn over or sequester all rents collected from the tenants.

On May 29, 1992, Allstate instituted an action in the Circuit Court of Sarasota County and sought to foreclose its mortgage. In the foreclosure action Allstate filed an Emergency Motion for Sequestration of Rents. This Motion was scheduled to be heard on Monday June 22, 1992; however, on the Friday before the hearing, the Debtor filed its Petition for Relief under Chapter 11. This, of course, stopped any further proceeding in the state court foreclosure action by virtue of the automatic stay imposed by § 362(a) of the Bankruptcy Code.

There is hardly any doubt that the sole purpose of filing the Petition for Relief was to bring the foreclosure action to a halt and to prevent Allstate from obtaining the relief it sought at that time, i.e., the sequestration of rents and ultimate foreclosure sale of the complex.

It is without dispute that the Debtor has only three employees, a secretary, mainte-

nance man, and property manager, who were all employees of a management company until shortly after the Debtor filed its petition. According to the Schedules filed by the Debtor, it appears that the Debtor has no priority creditors, and has 21 general unsecured creditors, all of whom are trade creditors, with claims totalling $15,481.71. It is undisputed that on the date of filing, the Debtor had sufficient cash on hand to pay these creditors in full, and that most of the accounts with these creditors were current. Other than Allstate, the Debtor has only these relatively small unsecured nonpriority creditors.

The complex is 89% leased, and, according to Robert J. Bradley, Jr., the president of one of the Debtor's general partners, is generating gross revenues of approximately $100,000.00 per month. The Debtor has been forced to lower rents in order to keep tenants in the complex. Without debt service, the bare minimum needed to operate the complex and keep property taxes current is between $30,000.00–$35,000.00. Since interest only payments to Allstate as called for by the mortgage loan total $90,125.00 per month, there is no question that the complex does not generate sufficient cash flow to pay the regularly scheduled debt service to Allstate. It should be noted that pursuant to a cash collateral order entered shortly after the commencement of the case, the Debtor is required to pay to Allstate all net operating income.

On July 29, 1992, the date of the hearing on the Motion under consideration, the Debtor filed a Plan and Disclosure Statement. Under the Plan, the Debtor proposes that Allstate retain its lien, and the Debtor plans either to refinance or sell the property and use the proceeds to satisfy Allstate's claim or to issue a promissory note to Allstate providing for the payment in full of the principal amount of Allstate's allowed claim in five years, with monthly interest payments in the interim. The Plan also provides that all holders of equity interests in the Debtor will retain their interests post-confirmation. This Court has scheduled a hearing for September 15, 1992, to consider approval of the Debtor's Disclosure Statement.

Based on these undisputed facts, it is the contention of Allstate that under the well-developed case law relevant to the matter under consideration, the conclusion is inescapable that this Petition was filed by the Debtor in "bad faith" and, therefore, it should be dismissed for "cause" pursuant to § 1112(b) of the Bankruptcy Code. In the alternative, Allstate contends the Debtor will never be able to effectuate a Plan and therefore the case must be dismissed based on § 1112(b)(2).

A mechanical application of the factors set forth in *Little Creek Development Co.*, 779 F.2d 1068, 1073 (5th Cir. 1986), indicates that this case has most of the hallmarks of bad faith. This in turn would compel the conclusion that this Chapter 11 case was in fact, filed in bad faith and should be dismissed. However, it is equally recognized that not one single factor set forth in *Little Creek, supra*, is determinative of the issue of the lack of good faith of a debtor seeking relief under Chapter 11 of the Bankruptcy Code. *In re Natural Land Corporation*, 825 F.2d 296 (11th Cir.1987); *In re Albany Partners Ltd.* 749 F.2d 670 (11th Cir.1984). While *Little Creek* is still well-recognized as persuasive authority, it is equally true that there is nothing inherently improper for a debtor with one single asset, generally an income-producing commercial property, to attempt to reorganize its affairs under the rehabilitative provisions of the Bankruptcy Code. In the last analysis, the key considerations are (1) the Debtor's motivation to file the Petition; (2) the economic vitality of the Debtor; (3) the Debtor's real need to reorganize and (4) the ability of the Debtor to achieve reorganization.

In the present instance, there is hardly any doubt that the sole and only reason the Debtor filed its Petition was to prevent the almost inevitable, i.e., sequestration of rents and ultimately a loss of the complex through foreclosure. This is basically nothing more than a two party dispute. There is no evidence that this Debtor has any real need to reorganize its debts simply because, other than Allstate, it has only minimal unsecured creditors whose accounts were current on the date of filing.

The sole asset of this Debtor is so heavily leveraged that it does not have a salvageable economic value which merits any favorable consideration. What is more important, there is hardly any doubt that this Debtor could never be able to obtain confirmation of any Plan of Reorganization unless it is able to use the cramdown provision, § 1129(b) of the Bankruptcy Code, a proposition that is highly doubtful. This is so because the Debtor could never satisfy the absolute priority rule, § 1129(b)(2)(B) and (C)(ii). Thus, this lack of a realistic possibility of an effective reorganization is further supportive of the conclusion that the Petition was filed in bad faith. *In re Punta Gorda Associates*, 143 B.R. 281 (Bankr.M.D.Fla.1992).

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Motion To Dismiss the Chapter 11 Case filed by Allstate is hereby granted, and the case is dismissed.

DONE AND ORDERED.