**In re VICTORY CONSTRUCTION CO., INC., Debtor.**

**John H. HADLEY, et al., Plaintiffs/Appellees,**

v.

**VICTORY CONSTRUCTION CO., INC., Defendant/Appellant.**

**Bankruptcy No. LA 80–07936–RO. Adv. No. LA 80–2131–RO. BAP No. CC 81–1026–VHG.**

United States Bankruptcy Appellate Panels of the Ninth Circuit.

Argued April 15, 1982.

Decided Feb. 15, 1984.

Gary E. Klausner, Robinson, Wolas & Diamant, Los Angeles, Cal., for defendant/appellant.

William C. Moritz, Donnelly, Clark & Chase, Los Angeles, Cal., for plaintiffs/appellees.

Before VOLINN, HUGHES and GEORGE, Bankruptcy Judges:

VOLINN, Bankruptcy Judge.

## I. INTRODUCTORY

The debtor, Victory Construction, appeals from an order terminating the automatic stay of 11 U.S.C. § 362 against foreclosure of its sole asset, a parcel of improved real estate. The trial court ruled that the debtor's lack of good faith in filing its Chapter 11 case was cause for relief from the stay imposed by 11 U.S.C. § 362. The basic issue presented by the parties is whether lack of good faith is "cause" for termination

of the stay under 11 U.S.C. § 362(d)(1). Because that issue has become moot by reason of the post-appeal events and circumstances, we vacate and remand.

The voluntary Chapter 11 petition of the debtor, Victory Construction Co., Inc., was filed on August 11, 1980. A complaint alternatively seeking relief from the automatic stay pursuant to 11 U.S.C. Sec. 362(d) or dismissal of the Chapter 11 case as not having been filed in good faith, was filed on August 20, 1980, by certain parties including Japan California Bank (JCB), John H. Hadley, Fred B. Green, and Decorative Carpets, Inc., each of whom claimed a secured interest in the debtor's only asset consisting of improved real estate.

Prior to trial, JCB and the debtor entered into a stipulation, approved by the court, whereby JCB withdrew its request for relief from the stay. The parties remaining, thereafter, were Victory as defendant, and plaintiffs Hadley, Green, and Decorative Carpets. Trial and argument occurred on October 27, 1980.

On January 26, 1981, as indicated, the court below ordered that the stay as to the plaintiffs be vacated for cause pursuant to 11 U.S.C. Sec. 362(d)(1), but did not dismiss the Chapter 11 case. 9 B.R. 549.

Subsequent to the entry of the court's Memorandum Opinion and order thereon, Victory appealed and filed a motion for stay pending appeal. On February 23, 1981, the Bankruptcy Court entered its stay order pending appeal. 9 B.R. 570. The stay order was conditioned on

(1) the debtor's payment of all property taxes which accrued against the debtor's real property subsequent to the date of the stay order;

(2) debtor's payment of all sums due or payable on account of all liens on the subject property senior to the lien of Hadley;

(3) debtor's payment of insurance on improvements on the subject property in an amount sufficient to insure the interests of Hadley; and

(4) debtor's payment to Hadley of interest on Hadley's lien claim at the rate of 18% per annum on $1,365,056.04, payable on the first day of each month. The agreed contract rate was 8%.

The debtor has complied with each requirement of the stay order. All payments thereunder, at the time of hearing on confirmation of a plan, October 22, 1981 (confirmation was denied as to this plan), totalled some $700,000 (ER 49). The stay has remained in effect and no foreclosure sale of the subject property has occurred. Meanwhile, negotiations and proceedings relative to confirmation of a plan have continued between the parties and the court below.

## II.  FACTUAL BACKGROUND

### A.  THE DEBTOR'S PURCHASE

The debtor's single asset is a parcel of real property consisting of one acre with a two-story, 18,000 square foot building on it. Plaintiff's appraiser testified that the land and building on it were worth approximately $2.46 million. Appellant debtor, however, provided a witness who testified the property had a fair market value of approximately $3.2 million. The court below made no finding as to the value of the property.

As of the commencement of the debtor's Chapter 11 case, the following liens and encumbrances were claimed against the property:

| | |
|---|---|
| (1) California Fed'l Sav. & Loan 1st deed of trust | $ 221,338 |
| (2) 2nd deed of trust in favor of JCB, note # 1 | 346,639 |
| (3) 3rd deed of trust to John Hadley securing an unpaid obligation of | 1,365,056 |
| (4) 4th deed of trust in favor of JCB, note #2 | 346,639 |
| (5) Lien for taxes due Los Angeles County | 30,000 |
| (6) Mechanic's lien claimed by Fred Green involved (disputed as to validity and amount) | 576,714 |
| (7) Mechanic's lien claimed by Decorative Carpets | 23,891 |

The total of the claimed liens and encumbrances was approximately $2,899,278 a figure falling between the foregoing appraisals.

The debtor had acquired the subject property from a trustee in bankruptcy in another bankruptcy proceeding, entitled Leslie Linder's London Club. The acquisition was initiated by an option agreement for purchase which was exercised March 24, 1980 for $107,500, whereby the debtor acquired the London Club trustee's interest subject to the foregoing liens. Prior to the purchase, the debtor's principals discussed with the various lienors assumption of their debts. The debtor made no binding agreements with any of the secured creditors, as of the date the option was exercised.

In order to arrange for financing, the debtor entered into a partnership with the Stad Trust owned and controlled by one Severyn Ashkenazy. The purpose of the partnership was to provide financial and management assistance to develop the property. Ashkenazy, by virtue of the partnership agreement, committed to advance the option purchase price, up to $130,000; $15,000 monthly debt service for up to three years totalling $650,000; purchase of JCB note # 2 for $225,000; and payment of JCB note # 1 at some $3,000 per month for 3 years or $116,000; and, finally, payment or purchase of the JCB note # 1 for $307,000. The total committed by Ashkenazy was therefore $1,327,163.

Escrow for the sale by the trustee to the debtor closed on May 8, 1980. On the same date, Hadley proceeded with foreclosure, causing publication of the notice of sale to be advertised.

On July 2, 1980, Victory filed an action for injunctive relief against Hadley and others in Los Angeles Superior Court. The application was denied and the foreclosure sale was reset for August 12, 1980. On July 11, Victory filed its Chapter 11 petition.

## B.  THE DEBTOR'S BACKGROUND

Victory was incorporated in 1964. It was engaged in real estate activities until 1972 when it became active in trading securities. In 1976 it became dormant. Fred Roven owns 100% of the stock and, since 1977, served as its president and only financial officer. During its inactivity, Victory had no employees although it did file franchise tax returns under California law. Roven utilized Victory as a vehicle to purchase the Leslie Linder property.

Roven is an experienced real estate dealer as is Ashkenazy. There were discussions and negotiations relating to the various liens of the Linder property. Nothing was reduced to writing. Up to the date of the exercise of the option on March 24, 1980, Roven made no substantial progress in his negotiations with the lienholders.

In 1979 or 1980 Roven contacted Ashkenazy, principal of the Stad Trust, as a result of which an unwritten partnership was formed with Stad based on a "gentlemen's agreement". The Stad Trust has a substantial net worth. Its assets are not involved in the bankruptcy case.

The secured creditors have been involved with successive bankruptcies for several years without receiving payments prior to the stay order. Hadley represents approximately 50 investors who are owed in excess of $1,300,000.

## III.  THE ORDER ON APPEAL AND STAY THEREOF

### A.

The order on appeal was included in the "Memorandum Opinion on Complaint to Vacate Stay for Cause (Lack of Good Faith of the Debtor in Filing Its Petition Under Chapter 11)".

The dispositive issues were stated as follows:

1. Does a debtor's lack of 'good faith' in filing a Chapter 11 case constitute 'cause' to vacate the automatic stay under Sec. 362(d)(1)?

2. Does the law impose a 'good faith' condition on debtor's right to file or maintain a proceeding under Chapter 11? If the answer to these questions is negative, plaintiff's right to relief in this case is limited to a consideration of the issues of adequate protection, the existence of equity, and

whether the property is necessary to an effective reorganization.

3. Was the debtor's petition in this case filed in 'good faith'? (Appellant's E.R. pp. 3, 4.)

Having framed the issues, the court engaged in an extensive discussion on the term "good faith" as it was employed and applied in former bankruptcy statutes and cases thereunder. These sources dealt with good faith, primarily, as a threshold requirement to filing a petition, dismissal thereof, or as a condition to confirmation of a plan. *In re Victory Const. Co., Inc.,* 9 B.R. 549 (Bkrtcy.C.D.Cal.1981).

The discussion recognized that the adequate protection indicated by 11 U.S.C. § 362(d)(1) and defined in § 361 is a statutory safeguard which may be expeditiously sought in order to preclude or compensate for ill-advised, or abusive retention or use of collateral by the debtor. However the court concluded not to consider the problem in this light, stating:

> Accordingly, and for the foregoing reasons, the debtor's lack of good faith in filing a case under Chapter 11 is 'cause', independent of the existence or lack of adequate protection, to vacate the automatic stay under Sec. 362(d)(1) ... 9 B.R. at 560.

## IV. THE STAY ORDER PENDING APPEAL

The debtor appealed the foregoing ruling and thereafter moved the court below for a stay of its ruling pending appeal. The Stay Order Pending Appeal contains some eleven pages of recitations and provisions.

The first paragraph summarized the Memorandum Opinion. It states:

> ... In that opinion, the court held that (i) the 'good faith' of the debtor is an implicit prerequisite to the filing or continuation of a proceeding under Chapter 11 of the Code; and (ii) the debtor's 'lack of good faith' in filing a case under Chapter 11 is 'cause', independent of the existence [of] lack of adequate protection, to vacate the automatic stay under Sec.

362(d)(1). Accordingly, the automatic stay was terminated.

The court pointed out that while the January 26, 1981 opinion vacated the automatic stay as to Hadley, Green, and Decorative Carpets, the debtor seeks to stay that order only as to Hadley. No stay of the rights of Green or Decorative Carpets to proceed under the January 26, 1981 order is sought or dealt with. Certain considerations were stated in support of a stay which may be summarized as follows:

1. Irreparable Harm.

Foreclosure by Hadley would be the end of the debtor since any plan for reorganization must include the real estate, its only asset.

2. Significance of the Issues on Appeal.

The issues presented are of great importance in the bankruptcy field and a decision by an appellate court on the good faith issues will have "far reaching effect on the reorganization process under the Code."

3. Lack of Prejudice to Hadley.

The harm resulting from delay would be purely economic and could be eliminated by imposing appropriate financial conditions on the stay.

4. Prospect of Success on Appeal.

The trial court's opinion is one of first impression. Accordingly, there is no reason to assume the appellate court would follow the trial court. Appellant's chances of success are equally as good as those of the appellee.

The court discussed the various standards relative to the fixing of terms. It compared Bankruptcy Rule 805 empowering the trial court to grant a stay pending appeal upon such terms as will protect the rights of parties with the provisions of Sec. 362 providing for adequate protection. The court stated:

> "Is the fixing of 'terms as will protect the rights of all parties in interest' as a condition to granting a stay under Rule 805 not similar to fixing adequate protection to protect the interests of secured creditors as a condition to continuing the stay under Sec. 362. *Terms* which pro-

tect the secured party whose right to foreclose is stayed pending appeal *have much in common with terms defining adequate protection of the secured creditor's interest in property when foreclosure is stayed under Sec. 362.* The essence of the protection under Rule 805, like the protection under Sec. 361, is the maintenance of status quo. The avoidance of impairment, erosion, or diminution of property rights and interests of the parties stayed, i.e., decrease in the value of the interest affected." (Emph. supp.)

The stay was granted, conditioned on the debtor paying and keeping current, as stated above, taxes, liens senior to Hadley, fire insurance and monthly interest on the debt of $1.3 million at 18%.

The stay order finally provided:

"This court, pursuant to stipulation of counsel at oral argument on the motion to stay, retains jurisdiction for the purpose of modifying or amending this order on the basis of new and different circumstances occurring subsequent to this date; such retention of jurisdiction to end when the appellate panel makes a ruling dispositive of the appeal now pending before it."

## V. DISCUSSION

### A. Contentions of the Parties

Appellant generally contends that the record does not support the conclusion that debtor did not act in good faith. The court made no finding that the debtor was insolvent, that it had no reasonable prospects for confirming a reorganization plan, or that secured creditors had not been provided with adequate protection. Appellant argues that interception of foreclosure is a common reason for filing of bankruptcy cases. Likewise, preservation of low interest mortgages is a significant factor in filings. The purchaser, Victory, was a single asset debtor as was its predecessor, Leslie Linder. Consideration of these factors in the context of good faith, intrinsically, and, in any event, to the exclusion of specific

balancing factors provided for by § 362(d)(1), (2) was error.

Hadley contends that the debtor's principals, with minimal funds and little or no risk to themselves, attempted to take advantage of the Hadley low interest debt, thereby continuing the already over-extended stay of foreclosure resulting from the prior Linder bankruptcy, that the proposed delay was sought in bad faith and was an abuse of the bankruptcy process.

### B.

### Debtor's Compliance With the Stay Order

While it is argued by appellee that the debtor never intended to provide adequate protection, the record shows that Ashkenazy stated that he was committed to provide $15,000 per month for debt service and Roven testified that he had plans to provide further funds (Appellant's E.R. 52, 54). This evidence, however, was not considered in the light of the specific issues formulated by § 362(d)(1), (2) relative to adequate protection, equity or need of the property for reorganization. Despite evidence presented as to equity and adequate protection, the court considered the matter solely in the perspective of good faith.

However, the stay order on appeal, was formulated on the basis of the requirements for adequate protection under § 362(d)(1). Further, as previously indicated, the stay order contained a provision retaining jurisdiction for the purpose of modifying same "on the basis of new or different circumstances occurring subsequent to this date ..."

The protection thus granted placed the mortgagee, Hadley, in a considerably improved position, with interest paid on his debt, not at the contract rate of 8%, but at a market rate of 18%. These conditions, as a result of Ashkenazy's commitment during trial, have been met to a point where the debtor has paid the secured creditors considerable sums during this proceeding. Appellee's position has been substantially improved not only by the payment of interest but also by payment of or provision for

senior liens as required by the trial court or by stipulation. This evidences ability to perform the promise made during trial by the Stad Trust which appellee, in its brief (p 7) concedes has a net worth of millions of dollars.

## C.

### Review of Post-Appeal Conduct

Despite the impending loss of its sole asset by reason of the termination of the stay, the administration of the Chapter 11 case has gone forward. The last plan presented was, as indicated, rejected. However, proceedings with respect to confirmation of subsequent plans have been ongoing.

An appellate court may take judicial notice of developments subsequent to appeal. See *Landy v. Federal Deposit Ins. Co.*, 486 F.2d 139 (3d Cir.1973) where the court stated:

> "Judicial notice is frequently taken, of course, of developments not of record subsequent to a lower court's decision in the application of the mootness doctrine by appellate courts." 486 F.2d at 151.

*Landy* cites a number of cases pertinent here. *See also Rothenberg v. Security Management Co.*, 667 F.2d 958, 961 (11th Cir.1982) and *Korn v. Franchard Corp.*, 456 F.2d 1206, 1208 (2nd Cir.1972) (which held that the court may reverse or remand on the basis of "any change, either in fact or in law, which has supervened since the judgment was entered.") See also *Frankfurth v. Cummins*, 20 B.R. 652, 653 (9th Cir. Bkrtcy.App.1982) which stated:

> Ordinarily an appellate court should base its decision on the facts as they existed at the time the trial court made its decision. However, the on-going nature of bankruptcy proceedings, on occasion, creates situations where the reviewing court may take notice of fundamental events occurring after the entry of the judgment from which appeal was taken . . . 20 B.R. at 653.

In connection with an application for order continuing oral argument on or about April 9, 1982, counsel for appellant represented to the court that oral argument should be deferred in light of the fact that appellant anticipates that it will shortly be confirming its first amended plan of reorganization, which will have the effect of rendering this appeal moot.

There was attached to the application, the reporter's transcript of proceedings of March 3, 1982 relative to a continued hearing re confirmation of amended plan of arrangement. This record shows clearly that counsel were negotiating before the court relative to the confirmation of a plan at which counsel for appellee addressed himself not as to whether the case was filed in good faith, but rather as to whether he was receiving interest at a sufficient rate of return on his investment, as distinguished from the contract rate. This prompted the court to state (Tr. 13):

> "Now, wait a second. When Victory picked this parcel out of the Leslie Linder bankruptcy, you had a six year note at 8% totally defaulted as to interest.
>
> MR. MORITZ: And a right to foreclose.
>
> THE COURT: Right. Okay.
>
> Victory bought it and went into a Chapter 11 with it and is now in cash going to bring you to the same position you had been—as you had been getting interest payments currently through the Leslie Linder bankruptcy to the current time. Now, that means that Victory is going to give Hadley and Ashkenazy and his brother is going to stand behind Victory, close behind them.
>
> Now, to assure Hadley the benefit of the bargain that Hadley made before Mr. Roven came in the picture. Now, Mr. Moritz, fair is fair. You have always maintained the position of injured innocence, and the Court has sustained it because I think the facts warrant it, but now we have a cash current position where Hadley is in the position he bargained for plus four percent and a guarantor.[1] It is very

---

1. The court's various allusions to the differ-

ences between the contract rate of interest,

difficult for me to understand what you are arguing for unless you are arguing that everything has been tainted with speculator's blood when they walked in. I think, Mr. Moritz, that deceleration is a right of a debtor. And in this case with a new solvent guarantor and a raising of the interest rate by 50%, that it is hard not to believe you are taking two positions.

One, punitive where you are the bad guy and therefore you just perish.

And number two, there has been an increase in the market and we want our cut."

The court later made a statement as to the debtor purging itself of bad faith:

"THE COURT: But Victory bought a transaction that your people voluntarily entered into and because they filed the bankruptcy in bad faith, and used the bankruptcy statute for the improper use of the bankruptcy statute for a purpose I held not contemplated—I held this stay could be vacated but now what they have done, they have purged the bad faith to the extent it was—they have proposed a plan which in and of itself is not bad faith. They are no longer seeking to secure the benefit of what they did.

MR. MORITZ: They are benefitting by cheap financing.

THE COURT: Sir, your clients are being brought current. You have a 50% increase in the interest rate and you have a solvent guarantor."

In view of these statements, in effect concluding that the debtor had furnished adequate protection, thereby having "purged" itself of bad faith, the question arises as to whether the debtor should not have been afforded the opportunity to furnish adequate protection in the original proceeding. To put it otherwise, the court appears to have concluded that adequate protection may compensate for a bad faith filing. In any event, it is clear the debtor, having complied with the requirements for

8%, and what was allowed in this stay order, 18%, cause some confusion. The difference, in

adequate protection, or the equivalent thereof, and the appellee, having accepted same, the dispute has been removed from stay termination to confirmation of a plan characterized by the court as being "in and of itself not in bad faith."

## VI. CONCLUSION

While it is difficult to focus on the varied events, contentions and citation of numerous statutes and cases in this matter, some degree of order appears if one recognizes, at the outset, that two alternative remedies were sought, dismissal of the proceeding *or* termination of the stay. The court chose the latter, thereby allowing, presumably, excision of the sole asset of the corporate debtor. Sale of the property on foreclosure, without this appeal and issuance of a stay pending appeal, would have inevitably resulted in dismissal of the bankruptcy case for mootness. *In re Robert's Farms, Inc.,* 652 F.2d 793 (9th Cir. 1981); *In re Bel Aire Associates, Ltd.,* 706 F.2d 301 (10th Cir.1983). It is apparent, however, that this proceeding has been and is being dealt with, by virtue of the trial court's retention of jurisdiction during appeal, as an ongoing Chapter 11 case with a stay recognized as tantamount to one providing adequate protection. As a result of the trial court's de facto reversal of its own order, substantial payments have been made by the debtor, the purpose and application of which remain undefined but require consideration in the light of the changed relationship which now obtains between appellees and the debtor. There is little question but that events subsequent to appeal have outrun the original issues, thereby rendering them moot.

We have been called upon to rule as to whether an injunction, critical to the survival of the debtor in a bankruptcy reorganization, may be terminated because the petition was not filed in good faith. We decline to do so since the basic dispute of the parties has been transformed to one

any event, is substantial.

concerning confirmation of a plan and appellees' treatment thereunder. Our ruling on the issue tendered would not be responsive to the actual dispute and present circumstances of the parties to this appeal.

We hold that events and circumstances occurring subsequent to entry of the order on appeal are consistent with reinstating the temporary stay of 11 U.S.C. § 362. Therefore, the order lifting the § 362 stay is VACATED and this matter is REMANDED to the bankruptcy court so that proceedings may be expeditiously brought on for hearing and considering provision for adequate protection by appellant to appellee, pending the confirmation of a plan of reorganization or otherwise.

HUGHES, Bankruptcy Judge, dissenting.

I agree that this appeal has been rendered moot by the trial court's post-appeal stance, particularly with respect to the purgative effect of the debtor's plan. The remedy for mootness should be dismissal of the appeal, however, not reversal.