**In re VICTORIA LIMITED PART-NERSHIP, d/b/a, Victoria Realty Trust, Debtor.**

**Bankruptcy No. 95–42667–JFQ.**

United States Bankruptcy Court, D. Massachusetts.

Oct. 5, 1995.

Thomas J. Swan, III, Paul D. Moore, Christine Conley, Choate, Hall & Stewart, Boston, MA, for Citizens Bank of Massachusetts (Creditor).

John F. Murphy, Travers, Murphy & O'Connor, Worcester, MA, for Victoria Limited Partnership (Debtor).

## OPINION

JAMES F. QUEENAN, Jr., Bankruptcy Judge.

Contending that this single asset real estate case has been filed in bad faith, Citizens Bank of Massachusetts (the "Bank") moves for dismissal, abstention or relief from auto-matic stay. I deny the motion and reject the good faith filing doctrine created by courts under the Code. Good faith, like apple pie, is difficult to oppose. The good faith of this doctrine, however, has nothing to do with honesty. When its true content is revealed, the doctrine is exposed in conflict with the Bankruptcy Code, its legislative history, Supreme Court precedent, and logic.

## I. FACTS

Victoria Limited Partnership (the "Debtor") is the sole beneficiary of Victoria Realty Trust, which in turn holds title to an office building at 277 Main Street, Marlborough, Massachusetts, containing some 21,000 square feet of office space. Peter H. McCann ("McCann") formed the Debtor in 1983 for the purpose of acquiring the property. In 1987, the Debtor obtained new financing from Yankee Bank for Finance and Savings ("Yankee"). The Debtor delivered to Yankee its $1,450,000 note secured by a first mortgage on the property and guaranteed by McCann. Yankee later failed. The Federal Deposit Insurance Corporation, Yankee's receiver, transferred the note and mortgage to Boston Five Cents Savings Bank ("Boston Five"), which merged into the Bank in October of 1993.

On March 4, 1992, the Debtor filed its first chapter 11 petition with this court. McCann had previously filed his own chapter 11 petition. Thereafter, on October 30, 1992, the Debtor entered into a stipulation with Boston Five rewriting the note into two notes and mortgages, one for $1 million and the other for $553,584.37. The bankruptcy court approved the stipulation and dismissed the case with the assent of the Debtor and Boston Five.

The Debtor made payments under the stipulation for almost two years. During that time, it engaged in discussions with the Bank attempting to negotiate a further restructuring of the loan. Disputes arose between them concerning an escrow account maintained by the Bank, the proper amount of tax payments and the propriety of monthly bills being sent out by the Bank. In June of

1994, the Debtor began withholding monthly payments.

On October 4, 1994, the Bank brought suit in Massachusetts Superior Court requesting judgment and the appointment of a receiver. The Superior Court denied the request for a receiver but granted judgment in the sum of $1,712,218.64. That judgment is now on appeal.

While the Superior Court action was pending, the Bank commenced suit in the Massachusetts Land Court to foreclose its mortgages. The parties continued discussing a restructuring of the loan, but could come to no agreement. The Bank scheduled a foreclosure sale for June 14, 1995. One hour prior to the scheduled sale, the Debtor filed this chapter 11 case. Five days later, the Bank filed the present motion. At the subsequent hearing, I denied the motion and reserved jurisdiction to issue this opinion.

## II. BANK'S CHARGES OF BAD FAITH

The Bank contends the foregoing circumstances justify dismissing this case as a bad faith filing. Specifically, it asserts the following as grounds for finding bad faith on the part of the Debtor: (1) the Debtor has made multiple bankruptcy filings, (2) it made this filing on the eve of foreclosure, (3) the filing is an effort to avoid the Bank's state court judgment, (4) the filing is a litigation tactic designed to resolve a two-party dispute, (5) the Debtor has few unsecured creditors, (6) the Debtor is guilty of improper prebankruptcy conduct in not complying with the parties' stipulation, (7) the mortgaged property is the Debtor's single asset, and (8)

there is no possibility of reorganization. In support of the last ground, the Bank says it will vote both its secured claim and its unsecured deficiency claim to block a reorganization on the strength of the absolute priority rule.[1]

The Bank cites, among other decisions, *Phoenix Piccadilly, Ltd. v. Life Insurance Co. of Virginia (In re Phoenix Piccadilly, Ltd.);*[2] *Albany Partners, Ltd. v. Westbrook (In re Albany Partners);*[3] and *In re Victory Construction Co.*[4] As shall be seen, these decisions and others do indeed justify dismissing the case for having been filed in bad faith.

## III. GOOD FAITH FILING REQUIRE-MENT CONTAINED IN CHAPTER X OF PRIOR BANKRUPTCY ACT

An understanding of the Code's good faith filing doctrine requires a review of the doctrine as it existed under the prior Bankruptcy Act, from which the Code's doctrine springs. Chapter X of the Act, but not chapter XI or XII, contained a provision expressly requiring a petition to be filed in good faith. In chapter X cases, the court was directed to "enter an order approving the petition, if satisfied that it complies with the requirements of this chapter and has been filed in good faith, or dismissing it if not so satisfied."[5] A petition was deemed filed in bad faith if any one of four circumstances spelled out in the statute was present.[6] Included among them was the situation where "it is unreasonable to expect that a plan of

---

1. *But see In re Gato Realty Trust Corp.,* 183 B.R. 15 (Bankr.D.Mass.1995); *In re Bjolmes Realty Trust,* 134 B.R. 1000 (Bankr.D.Mass.1991).

2. 849 F.2d 1393 (11th Cir.1988).

3. 749 F.2d 670 (11th Cir.1984).

4. 9 B.R. 549 (Bankr.C.D.Cal.1981), *vacated on other grounds,* 37 B.R. 222 (9th Cir. BAP1984).

5. Bankruptcy Act of 1898 § 141, 11 U.S.C. § 541 (1976) (repealed 1978).

6. Section 146 of the Act provided:
   Without limiting the generality of the meaning of the term "good faith", a petition shall be deemed not to be filed in good faith if—

(1) the petitioning creditors have acquired their claims for the purpose of filing the petition; or
(2) adequate relief would be obtainable by a debtor's petition under the provisions of chapter XI of this Act; or
(3) it is unreasonable to expect that a plan of reorganization can be effected; or
(4) a prior proceeding is pending in any court and it appears that the interests of creditors and stockholders would be best subserved in such prior proceeding.
Bankruptcy Act of 1898 § 146, 11 U.S.C. § 546 (1976) (repealed 1978).

reorganization can be effected."[7]

In a chapter X case, therefor, the court had to make an immediate assessment of the debtor's chances of reorganizing. It was required to measure at the outset the debtor's earning power and going concern value.[8] Because the absolute priority rule applied whether or not classes of claims accepted the plan of reorganization, a court would dismiss the petition as a bad faith filing when the debtor's stockholders sought to retain their interests but failed to show they proposed to make a capital contribution equal to the value of those interests.[9]

A pending foreclosure proceeding was also cause for dismissal. The statute provided that a petition was filed in bad faith if "a prior proceeding is pending in any court and it appears that the interests of creditors and stockholders would be best subserved in such prior proceeding."[10] As a result, in *Marine Harbor Properties, Inc. v. Manufacturer's Trust Co.*,[11] the Supreme Court dismissed a single asset real estate case because of the pendency of a state court foreclosure suit in which a receiver had been appointed to operate the property.

Neither chapter XI nor chapter XII contained a provision requiring the filing to be made in good faith. The Ninth Circuit held this omission barred any implicit good faith requirement in a chapter XII case.[12] The First Circuit provided contrary dictum in another chapter XII case, *Charlestown Savings Bank v. Martin (In re Colonial Realty*

*Co.).*[13] In *Colonial Realty*, the court of appeals affirmed an order requiring a mortgagee in possession to turn over an apartment building to the debtor, remanding the case to the district court. Citing chapter X decisions, the court instructed the district court to conduct a hearing on whether the petition was filed in good faith and there was a reasonable possibility of a successful chapter XII arrangement. The court showed no awareness that only chapter X contained a provision on good faith filing.

## IV. DEVELOPMENT OF GOOD FAITH FILING DOCTRINE UNDER THE CODE

The development and content of the Code's good faith filing doctrine has been treated elsewhere, and I draw upon that treatment.[14] The doctrine's genesis is largely the decision in *In re Victory Construction Co.*,[15] relied upon by the Bank. The debtor in that case was seeking to convert dormant club property into an operating hotel. It had formed a partnership with an individual who had experience in the development and management of hotels. The debtor bought the property on behalf of the partnership for about $3 million, paying $100,000 in cash and assuming four mortgages bearing attractive low interest rates. Negotiations with the mortgage holders broke down, and one mortgage holder commenced foreclosure. After unsuccessfully seeking to enjoin the foreclosure in state court, the debtor filed its chapter 11

---

**7.** *Id.*

**8.** *E.g., In re 325 E. 72nd St., Inc.,* 53 F.Supp. 997 (S.D.N.Y.1944).

**9.** *E.g., Marine Harbor Properties, Inc. v. Manufacturer's Trust Co.,* 317 U.S. 78, 63 S.Ct. 93, 87 L.Ed. 64 (1942); *San Francisco Laundry Ass'n v. American Trust Co.,* 127 F.2d 187 (9th Cir.1942); *Chapman Bros. Co. v. Security–First Nat'l Bank,* 111 F.2d 86 (9th Cir.), *cert. denied,* 311 U.S. 652, 61 S.Ct. 28, 85 L.Ed. 417 (1940).

**10.** Bankruptcy Act of 1898 § 146(4), 11 U.S.C. § 546(4) (1976) (repealed 1978).

**11.** 317 U.S. 78, 63 S.Ct. 93, 87 L.Ed. 64 (1942).

**12.** *Sumida v. Yumen,* 409 F.2d 654 (9th Cir. 1969), *cert. denied,* 405 U.S. 964, 92 S.Ct. 1168, 31 L.Ed.2d 240 (1972).

**13.** 516 F.2d 154 (1st Cir.1975).

**14.** *See* JAMES F. QUEENAN, JR., PHILIP J. HENDEL, INGRID M. HILLINGER, 1 CHAPTER 11 THEORY AND PRACTICE: A GUIDE TO REORGANIZATION §§ 6.11–.18 (1994 & Supp.1995). The doctrine has ramifications beyond single asset real estate cases. This is especially so with respect to debtors who change their form to attain filing eligibility, debtors to whom assets are transferred for the purpose of insulating other assets from creditors, and debtors who file to resolve a particular dispute rather than general financial difficulties. *See Id.* at §§ 6.07, 6.08 and 6.18.

**15.** 9 B.R. 549 (Bankr.C.D.Cal.1981), *vacated on other grounds,* 37 B.R. 222 (9th Cir. BAP1984).

petition. The foreclosing mortgage holder immediately moved for dismissal or relief from stay on the ground the filing had been made in bad faith.

The bankruptcy court in *Victory Construction* granted relief from stay on the ground of a bad faith filing. Relying on the absent-minded dictum of the First Circuit in *Colonial Realty* [16] concerning dismissal, the court ruled good faith was an implicit prerequisite to the filing of a chapter 11 petition. The court did not discuss section 1112(b) of the Bankruptcy Code, which governs dismissal of chapter 11 cases.[17] Examining the circumstances before it, the court found bad faith present for three reasons: (1) the debtor was attempting to use chapter 11 "to create and organize a new business, not to reorganize or rehabilitate an existing enterprise;"[18] (2) the debtor had "not acted with that candor, frankness, sincerity and willingness to do equity which are the indicia of 'good faith'," [19] and (3) the purchase of fully encumbered property "on the eve of foreclosure" is inconsistent with the purpose of the statute.[20]

It is difficult to defend any of these grounds. Filing to prevent foreclosure, hardly an uncommon filing motivation, merely takes advantage of the remedy of the automatic stay. The court furnished no explanation for its comment that the debtor lacked "candor" or "sincerity" in its dealings with the mortgage holders. The court's principal ground seems to be the first, that chapter 11 is intended to be used for reorganizing an existing business rather than creating a new one. The court was not concerned with the debtor's financial or business ability to start the new business. Indeed, later events proved the debtor had that ability.[21]

Other early Code decisions embracing the doctrine also relied upon chapter X decisions decided under a statute expressly authorizing dismissal on bad faith filing grounds.[22] They looked more to the debtor's ability to reorganize, but treated inability to reorganize as only one of several grounds for dismissing the case. They added as separate grounds circumstances such as the debtor having no operating business, few or no employees or little unsecured debt.[23] Occasionally, searching for a factor relating to honesty, they unconvincingly found fault with the debtor's conduct, as did the court in *Victory Construction*. For example, in *Albany Partners, Ltd. v. Westbrook (In re Albany Partners)*,[24] the Eleventh Circuit accompanied its conclusion that the debtor had slim business prospects with criticism of the debtor's principals for not having told their mortgage lender they were transferring ownership of the property to the debtor. The court did not explain how the nonfiduciary relationship of the parties imposed that duty of disclosure.

---

16. *See supra* note 13 and accompanying text.

17. Section 1112(b)(1), (2) and (3), discussed in detail later, provides in part as follows:

> ... [T]he court may convert a case under this chapter ... or may dismiss a case ... for cause, including—
> (1) continuing loss to or diminution of the estate and absence of reasonable likelihood of rehabilitation;
> (2) inability to effectuate a plan;
> (3) unreasonable delay by the debtor that is prejudicial to creditors;

11 U.S.C. § 1112(b) (1988).

18. *In re Victory Constr. Co.*, 9 B.R. 549, 564 (Bankr.C.D.Cal.1981); *vacated on other grounds*, 37 B.R. 222 (9th Cir. BAP1984).

19. *Id.*

20. *Id.* at 654–65.

21. The debtor's chapter 11 plan was eventually confirmed. The debtor was able to accomplish this because the order of dismissal was stayed pending appeal, and the appeal was dismissed as moot. *See Hadley v. Victory Constr. Co. (In re Victory Constr. Co.)*, 37 B.R. 222 (9th Cir. BAP1984). In confirming the plan, a successor bankruptcy judge stated the good faith filing doctrine is unable to "help counsel and litigants to understand what they should and should not do in any given case." *In re Victory Constr. Co.*, 42 B.R. 145, 148–49 (Bankr.C.D.Cal.1984). He believed the doctrine "covers too many different kinds of conduct" and is "merely a pejorative phrase, functioning at such a high level of abstraction that one can scarcely discern what might be beneath it." *Id.* at 149.

22. *E.g., In re Winshall Settlor's Trust*, 758 F.2d 1136 (6th Cir.1985); *In re Dutch Flat Inv. Co.*, 6 B.R. 470 (Bankr.N.D.Cal.1980).

23. *Id.*

24. 749 F.2d 670 (11th Cir.1984).

The perceived need to relate good faith to the debtor's conduct led to an enlargement of the number of circumstances which justify finding bad faith in the filing. Worse, the courts began to say that not all the circumstances listed as indicators of bad faith need be present to support the finding. The Fifth Circuit started this trend with its decision in *Little Creek Development Co. v. Commonwealth Mortgage Co. (In re Little Creek Development Co.).*[25] The case concerned a townhouse development project. Relying on the old chapter X cases, the court ruled good faith must be present in the filing. It remanded the case to the bankruptcy court for a finding in this regard. The court stated a finding on the question of good faith should be "based on a conglomerate of factors rather than any single datum" and that "[s]everal, but not all," of various circumstances "usually exist" when a debtor files in bad faith.[26] It went on to list the following circumstances as relevant:

1. The debtor owns only one encumbered asset;

2. The debtor lacks employees other than its principals;

3. The debtor has "little or no cash flow and no available sources of income to sustain a plan of reorganization;"

4. The debtor has few, if any, unsecured creditors;

5. A foreclosure is in process, which the debtor has tried to prevent by defenses on the merits or by posting a bond;

6. There are "sometimes allegations of wrongdoing by the debtor."[27]

Presumably, the third circumstance listed is intended to describe a debtor with poor prospects of successfully reorganizing. The next major decision formulating the doctrine threw out even that as an essential element.

In *Phoenix Piccadilly, Ltd. v. Life Insurance Co. of Virginia (In re Phoenix Piccadilly, Ltd.),*[28] also cited by the Bank, the Eleventh Circuit dealt with a debtor which had offered credible evidence in the bankruptcy court of its ability to reorganize. Unlike the debtor in cases such as *Little Creek,* the debtor here owned partially developed property rather than raw land. It was developing an apartment complex in four phases, but was stymied by a secured lender who had obtained the appointment of a receiver to manage one phase. It was also doing battle with other secured lenders seeking to have a receiver appointed to manage the other three phases. The bankruptcy judge dismissed the petition as a bad faith filing.

The court in *Phoenix Piccadilly* affirmed the dismissal notwithstanding the evidence offered below of the debtor's favorable prospects of reorganizing. Conceding there is "no particular test" to determine whether a filing is in bad faith, the court said it is proper to consider circumstances indicating an intent "to abuse the judicial process and the purposes of the reorganization provisions" or "to delay or frustrate the legitimate efforts of secured creditors to enforce their rights."[29] Embellishing on its prior decisions, the court affirmed the bankruptcy court's finding of bad faith because of the presence of circumstances which it described as follows:

(i) The Debtor has only one asset, the Property, in which it does not hold legal title [mortgagees held legal title];

(ii) The Debtor has few unsecured creditors whose claims are small in relation to the claims of the Secured creditors;

(iii) The Debtor has few employees;

(iv) The Property is the subject of a foreclosure action as a result of arrearages on the debt;

(v) The Debtor's financial problems involve essentially a dispute between the Debtor and the Secured Creditors which can be resolved in the pending State Court Action; and

(vi) The timing of the Debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the Debtor's

---

25. 779 F.2d 1068 (5th Cir.1986).

26. *Id.* at 1072.

27. *Id.* at 1073.

28. 849 F.2d 1393 (11th Cir.1988).

29. *Id.* at 1394.

secured creditors to enforce their rights.[30]

Conspicuously absent from this list is anything having to do with the debtor's reorganization prospects. The court obliquely acknowledged the debtor had the potential to reorganize, stating it declined to "change the consequences of that finding [of bad faith] because of the debtor's possible equity in the property or potential for successful reorganization."[31] Stripped of much of its window dressing, *Phoenix Piccadilly* stands for the startling proposition that it is an act of bad faith for a debtor to file under chapter 11 in order to prevent foreclosure upon its only asset.

*Phoenix Piccadilly* and *Little Creek* have been the death knell for many single asset real estate reorganizations.[32] Admitting all the *Little Creek* factors may be present in a typical real estate reorganization, the Fifth Circuit has dealt with the charge that these decisions are "economic apartheid against the real estate industry."[33] Judge Jones, the author of *Little Creek*, replied that a reorganization should be allowed to proceed if the debtor is "an operating business, like a ranch or a hotel," or if its real estate development is nearing a completion which would "markedly enhance the asset's value."[34] Not willing to concede the apartheid charge even with respect to a debtor developing raw land, the court insisted such a development might also pass muster if the filing is "to protect true owner equity when market conditions suggest the remedy of a debt restructuring, as opposed to simple liquidation, and the

likelihood of prompt resale."[35] This is interesting semantic legerdemain.

## V. DEFICIENCIES OF GOOD FAITH FILING DOCTRINE

### A. Doctrine's Conflict with Wording of Section 1112(b)

Courts attempt to reconcile the good faith filing doctrine with section 1112(b) of the Code. They observe that the examples of "cause" contained in the statute are preceded by the word "including," and that section 102(3) states "including" is "not limiting."[36] That of course is true. Obviously, however, any unspecified cause for dismissal must not conflict with the examples of cause set forth in the statute.

The good faith filing doctrine runs head on into section 1112(b)(1), which authorizes the court to dismiss the case for "continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation."[37] Except for a few decisions such as *Phoenix Piccadilly*, courts regard a debtor's perceived slim chances of reorganizing as an element of a bad faith filing. Yet, under section 1112(b)(1), a debtor's poor reorganization prospects do not alone justify dismissal. There must also be present "continuing loss to or diminution of the estate." Courts embracing the doctrine ignore the need for such loss or diminution. In any event, the doctrine would still conflict with subsection (b)(1). Its many other factors effectively rewrite the subsection.

The doctrine also conflicts, for much the same reason, with the ground for dismissal

---

30. *Id.* at 1394–95.

31. *Id.* at 1395.

32. *E.g., Pleasant Pointe Apartments, Ltd. v. Kentucky Hous. Corp. (In re Pleasant Pointe Apartments Ltd.)*, 139 B.R. 828 (W.D.Ky.1992); *In re Heald*, 140 B.R. 817 (Bankr.M.D.Fla.1992); *In re Maricamp Assocs., Ltd.*, 139 B.R. 554 (Bankr. M.D.Fla.1992); *In re Aurora Invs., Inc.*, 134 B.R. 982 (Bankr.M.D.Fla.1991); *In re Nesenkeag, Inc.*, 131 B.R. 246 (Bankr.D.N.H.1991); *Germania Bank v. Lindbergh Plaza Assocs. (In re Lindbergh)*, 115 B.R. 202 (Bankr.E.D.Mo.1990); *In re Carco Partnership*, 113 B.R. 735 (Bankr.M.D.Fla.1990); *In re Park Place Assocs.*, 115 B.R. 940 (Bankr. N.D.Ill.1989); *In re Castleton Assocs. Ltd. Partnership*, 109 B.R. 347 (Bankr.S.D.Ind.1989); *In re Schlangen*, 91 B.R. 834 (Bankr.N.D.Ill.1988);

*In re Citadel Properties*, 86 B.R. 275 (Bankr. M.D.Fla.1988); *Mauna Lani Resort, Inc. v. Endrex Invs., Inc. (In re Endrex Invs., Inc.)*, 84 B.R. 207 (Bankr.D.Colo.1988), *rev'd in part on other grounds*, 111 B.R. 939 (D.Colo.1990).

33. *Humble Place Joint Venture v. Fory (In re Humble Place Joint Venture)*, 936 F.2d 814, 818 (5th Cir.1991).

34. *Id.*

35. *Id.*

36. *See, e.g., supra* note 32 and decisions cited therein.

37. 11 U.S.C. § 1112(b)(1) (1988).

contained in section 1112(b)(2), "inability to effectuate a plan."[38] If subsections (b)(1) and (b)(2) are not themselves to be in conflict, and they should be interpreted to be in harmony,[39] subsection (b)(2) cannot mean lack of reasonable prospects of reorganization without regard to loss or asset diminution. It apparently describes, therefor, the inability of a debtor to confirm a *filed* plan of reorganization. Because the doctrine applies at the very outset of the case, it is also inconsistent with the ground for dismissal contained in section 1112(b)(3), "unreasonable delay by the debtor that is prejudicial to creditors."[40]

In summary, all three subsections expressly or impliedly contemplate the passage of some time before a case is dismissed. Courts have commented, moreover, that the doctrine and its vagaries are unnecessary in light of the specific grounds for dismissal contained in the statute[41] and the remedies available to creditors concerning matters such as adequate protection.[42]

The good faith filing doctrine is also inconsistent with section 1129(a)(3) of the Code requiring that a plan of reorganization be "proposed in good faith and not by any means forbidden by law."[43] Congress obviously knew how to impose a good faith requirement when it wished to do so.

## B. *Conflict with Legislative History of Section 1112(b)*

The inconsistency between the good faith filing doctrine and the wording of section 1112(b) seems obvious. If there can be any doubt on this, however, that doubt is resolved by the statute's legislative history.

As discussed in part III, chapter X of the prior Bankruptcy Act expressly required a filing to be made in good faith, and gave examples of bad faith filings. The omission of such a provision in the Code was intentional. The Commission on the Bankruptcy Laws of the United States believed a requirement of good faith in the filing led to fruitless litigation with secured creditors early in the case.[44] It was also harsh on a debtor who needed some time to complete ongoing operational changes.

Included among the statutory examples of bad faith filings in prior chapter X was the situation where "it is unreasonable to expect that a plan of reorganization can be effected."[45] The Commission believed this ground for dismissal should continue under the Code, and included it in the bill which it filed to start the process leading to enactment of the Bankruptcy Reform Act of 1978.[46] The initial House and Senate bills differed on the point. The House bill authorized dismissal for "inability to effectuate a plan,"[47] whereas the Senate bill contained, as separate grounds for dismissal, "continuing loss to or diminution of the estate of an insolvent debtor" and "absence of a reasonable likelihood of rehabilitation."[48]

Subsections (1), (2) and (3) of section 1112(b) therefor represent a compromise be-

38. 11 U.S.C. § 1112(b)(2) (1988).

39. *See, e.g., Sunshine Dev., Inc. v. F.D.I.C.,* 33 F.3d 106, 113 (1st Cir.1994).

40. 11 U.S.C. § 1112(b)(3) (1988).

41. *See In re Mandalay Shores Coop. Hous. Ass'n, Inc.,* 63 B.R. 842, 848–49 (N.D.Ill.1986); *Foundry of Barrington Partnership v. Barrett (In re Foundry of Barrington Partnership),* 129 B.R. 550 (Bankr.N.D.Ill.1991); *In re Mill Place Ltd. Partnership,* 94 B.R. 139 (Bankr.D.Minn.1988).

42. *See In re Clinton Centrifuge, Inc.,* 72 B.R. 900, 905 (Bankr.E.D.Pa.1987); *In re McStay,* 82 B.R. 763 (Bankr.E.D.Pa.1988).

43. 11 U.S.C. § 1129(a)(3) (1988).

44. *See* Frank R. Kennedy & Gerald K. Smith, *Postconfirmation Issues: The Effects of Confirma-*

*tion and Postconfirmation Proceedings,* 44 S.C.L.REV. 621, 732–33 n. 409 (quoting from Gerald K. Smith & Randolph J. Haines, *Chapter 11– Reorganization,* 1988 ANN.SURV.BANKR.L. 495, 498– 509 (1989)).

45. Bankruptcy Act of 1898 § 146, 11 U.S.C. § 546 (1976) (repealed 1978).

46. See H.R.Doc. No. 137, 93d Cong., 1st Sess., pt. II, § 7–112 (1973), U.S.Code Cong. & Admin.News 1973 at p. 2252.

47. H.R. 8200, 95th Cong., 1st Sess. § 1112(b)(1) (1977).

48. S. 2266, 95th Cong., 2d Sess. § 1112(b)(1) & (2) (1978).

tween the two bills. Congress obviously gave careful consideration to whether a debtor's slim chance of reorganization, considered alone, should be ground for dismissal at the beginning of the case, and decided it should not be.

Court statements of the doctrine invariably include as an indicator of a bad faith filing the fact the filing was made to prevent imminent foreclosure. Here again there is inconsistency with the legislative history of section 1112(b). Another statutory example of a bad faith filing under old chapter X was the circumstance that "a prior proceeding is pending in any court and it appears that the interests of creditors and stockholders would be best subserved in such prior proceeding." [49] A pending foreclosure proceeding justified dismissal of the case under this ground.[50] None of the bills filed in Congress proposed retention of this ground for dismissal. The good faith filing doctrine nevertheless resurrects it.

### C. *Conflict with Toibb v. Radloff*

As has been seen, courts have formulated the doctrine in such a way as to bar from chapter 11 debtors having the following characteristics: one asset, few employees, few unsecured creditors, difficulties with only one creditor, and the absence of an ongoing business. In *In re Victory Construction Co.,* [51] it will be recalled, the court dismissed the case largely because the debtor was attempting to begin a new business rather than reorganize an existing one.

In making these formulations of the doctrine, the courts have actually fashioned a rule for a debtor's eligibility to file under chapter 11. In so doing, the decisions conflict with the Supreme Court's decision in *Toibb v. Radloff.*[52] The Court there resolved a disagreement existing among the courts of appeal on whether an individual not engaged

in business qualifies to be a debtor under chapter 11. The Court held such an individual is an eligible chapter 11 debtor. It observed that chapter 11 is available to a "person" and noted the absence of any requirement that the "person" carry on a business.[53] It regarded this "plain language" to be compelling.[54] Notwithstanding the statute's lack of ambiguity, the Court examined references in committee reports to business debtors and Congressional statements indicating Congress regarded chapter 11 to be available to nonbusiness debtors. The Court concluded this legislative history represents, at most, conflicting views on the question. Nor was the Court impressed with the many references in the Code itself to business debtors. As the Court saw it, these references merely show Congress expected chapter 11 to be used primarily by business debtors.

In light of *Toibb v. Radloff,* no longer can a court deny chapter 11 relief to a debtor on the ground it lacks those characteristics the court thinks are desirable in a chapter 11 debtor. If a salaried individual working for another is eligible for relief, surely so too is a business entity lacking some desired number of employees, assets or unsecured creditors, or engaged in an attempt to start a new venture. The doctrine's conflict with *Toibb v. Radloff* would perhaps be more obvious if the doctrine were recognized for what it is— an eligibility rule.

### D. *The Doctrine's Reasoning Deficiencies*

The good faith filing doctrine has deficiencies beyond its conflict with the Code, legislative history and *Toibb v. Radloff.* It is a prime example of how courts should not formulate a rule of law.

A rule of law should be susceptible to clear statement, so that the result of its application to particular facts can be predicted with rea-

---

**49.** Bankruptcy Act of 1898 § 146, 11 U.S.C. § 546 (1976) (repealed 1978).

**50.** *E.g., Marine Harbor Properties, Inc. v. Manufacturer's Trust Co.,* 317 U.S. 78, 63 S.Ct. 93, 87 L.Ed. 64 (1942).

**51.** 9 B.R. 549 (Bankr.S.D.Cal.1981), *vacated on other grounds,* 37 B.R. 222 (9th Cir. BAP1984).

**52.** 501 U.S. 157, 111 S.Ct. 2197, 115 L.Ed.2d 145 (1991).

**53.** *Id.* at 166.

**54.** *Id.*

sonable certainty.[55] The good faith filing doctrine fails this test miserably. Its application does not depend upon the presence of any particular circumstances the courts list as relevant. Moreover, although a filing on the eve of foreclosure is typically stated to be a factor in the doctrine, courts recognize, as they must, that invoking the automatic stay is not of itself bad faith. If that is so, it is difficult to see why filing to prevent foreclosure is an indicator of bad faith when combined with other factors. Also often stated as a factor in the doctrine is the debtor's perceived inability to reorganize. And yet, as demonstrated by *Phoenix Piccadilly*, not even this is an essential element.

There is actually no good faith element to the doctrine. The Uniform Commercial Code defines good faith to mean "honesty in fact in the conduct or transaction concerned."[56] Courts applying the doctrine are transparently artificial in finding misconduct on the part of the debtor where there is none. Often, dishonesty or misconduct is not even listed as an element of the doctrine. A remedy for dishonesty has a place in bankruptcy law as it has elsewhere.[57] But the good faith filing doctrine has nothing to do with dishonesty.

In sum, the good faith filing doctrine is an amorphous gestalt, devoid of reasoning and impenetrable to understanding.

### E. *Bankruptcy Reform Act of 1994*

Finally, the Bankruptcy Reform Act of 1994[58] militates against the doctrine's validity. The Act added section 362(d)(3) of the Code to govern the automatic stay in so-called "single asset real estate" cases.[59] In doing so, Congress obviously recognized the propriety of reorganization by single asset real estate debtors and their need for a reasonable period of time in which to file a plan of reorganization. The good faith filing doctrine all but bars them from reorganizing.

For all the foregoing reasons, an order has issued denying the Bank's motion.

---

**55.** *See, e.g.*, Antonin Scalia, *The Rule of Law as a Law of Rules*, 56 U.Chi.L.Rev. 1175 (1989).

**56.** UCC § 1–201 (1990).

**57.** For example, in *Furness v. Lilienfield*, 35 B.R. 1006 (D.Md.1983), before the filing the debtor had lied to a court in saying he was unable to attend trial for medical reasons. When that ploy was unsuccessful, the debtor filed a chapter 11 petition in a further attempt to stall the trial. The court was justified in dismissing the case as part of a fraudulent course of conduct, although our jurisprudence would perhaps be better off if the court had simply lifted the stay to permit the trial to continue. *See also* 11 U.S.C. § 1129(a)(3) (1988) (requiring good faith in plan proposal).

**58.** Pub.L. No. 103–394.

**59.** Section 362(d)(3) authorizes relief from stay:

(3) with respect to a stay of an act against single asset real estate under subsection (a) by a creditor whose claim is secured by an interest in such real estate, unless, not later than the date that is 90 days after the entry of the order for relief (or such later date as the court may determine for cause by order entered within that 90–day period)—
  (A) the debtor has filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or
  (B) the debtor has commenced monthly payments to each creditor whose claim is secured by such real estate (other than a claim secured by a judgment lien or by an unmatured statutory lien), which payments are in an amount equal to interest at a current fair market rate on the value of the creditor's interest in the real estate.
11 U.S.C. § 362(d)(3) (1994).
The phrase "single asset real estate" is defined as follows:
"single asset real estate" means real property constituting a single property or project, other than residential real property with fewer than 4 residential units, which generates substantially all of the gross income of a debtor and on which no substantial business is being conducted by a debtor other than the business of operating the real property and activities incidental thereto having [sic] aggregate noncontingent, liquidated secured debts in an amount no more than $4,000,000;
11 U.S.C. § 101(51B) (1994).