In re Y.J. SONS & CO., INC., Debtor.

Y.J. SONS & CO., INC., Michael S. Kimm, Esq., Appellants,

v.

ANEMONE, INC., Appellee.

Y.J. SONS & CO. INC., Michael S. Kimm, Esq., Appellants,

v.

GALEN, INC., Appellee.

Civil Action No. 97–1277 (AJL).

United States District Court, D. New Jersey.

Aug. 11, 1997.

Michael S. Kimm, Hackensack, NJ, for Y.J. Sons & Co., Inc.; pro se Co–Appellant.

David S. Hartstein, Hartstein & Hartstein, Englewood, NJ, for Anemone, Inc.

Alan R. Ackerman, Parsippany, NJ, for Galen, Inc.

## OPINION

LECHNER, District Judge.

On 24 December 1996, appellant Y.J. Sons & Co., Inc. ("Y.J.") filed a voluntary petition (the "Petition") for bankruptcy protection, pursuant to 11 U.S.C. § 1101 *et seq.* On 8 January 1997, appellee Anemone, Inc. ("Anemone") filed a motion for "Abstention, Remand, Relief from the Automatic Stay and for Other Relief" (the "Anemone Motion to Dismiss"). On 16 January 1997, Bankruptcy Judge Rosemary Gambardella ("Bankruptcy Judge Gambardella") granted the Anemone Motion to Dismiss and dismissed the Petition as having been filed in bad faith (the "Chap-

ter 11 Dismissal"). On 10 March 1997, Bankruptcy Judge Gambardella denied Y.J.'s motion for reconsideration (the "Y.J. Reconsideration Motion") and granted Anemone's motion for sanctions, pursuant to Bankruptcy Rule 9011 ("Bankruptcy Rule 9011") (the "Anemone Sanction Motion"), awarding attorney fees in the amount of $4,799.80 (the "Anemone Sanction Award"). On 22 April 1997, Bankruptcy Judge Gambardella awarded appellee Galen, Inc. ("Galen") attorney fees (the "Galen–Sanction Award") in the amount of $1,980.

Currently before the court are appeals by Y.J. of the Chapter 11 Dismissal, the Anemone Sanction Award and the Galen Sanction Award.[1] As will be discussed, Y.J.'s attorney, Michael S. Kimm ("Kimm"), joins in the appeals of the two sanction awards (collectively, the "Sanction Awards") because he was held joint and severally responsible with Y.J. For the reasons set forth below, the Chapter 11 Dismissal, the Anemone Sanction Award and the Galen Sanction Award are affirmed.

### I. *Facts*

#### A. *Background*

In March 1992, Y.J. purchased the Beers Flower Shop (the "Flower Shop") in Ridgewood, New Jersey, from Anemone for $278,000. *See* Y.J. Brief at 4; Anemone Brief at 4. Y.J. paid $170,000 up front and mortgaged the remaining $108,000. *See* Y.J. Brief at 6; Anemone Brief at 4. The mortgage of the $108,000 (the "Mortgage") was secured by a promissory note (the "Promissory Note") guaranteed by the principals of Y.J., Kyung Sook Son ("Kyung Son"), president and sole

---

1. In support of their appeals, Y.J. and Kimm submitted: Appellant's Brief (the "Y.J. Brief"); Appellant's Reply Brief with Application to Reinstate Chapter 11 Case on Summary Disposition or a Motion for Stay Pending Review (the "Reply Brief"); Declaration of Michael S. Kimm, Esq. in Support of Order to Show Cause for Provisional Reinstatement (the "Kimm Decl."); Appellants' Brief on Appeal from the Two Sanctions Orders (the "Y.J. Sanction Brief"); Appellants' Reply Brief on Appeal from the Two Sanction Orders (the "Y.J. Sanction Reply Brief"); Designation of Record on Appeal (the "Record on Appeal").

 In opposition to the appeals, Anemone submitted: Appellee's Brief (the "Anemone

Brief"); letter of David S. Hartstein, Esq., dated 13 June 1997; and Brief of Anemone, Inc. in Reply to Appellants Brief on Appeal from Two Sanction Orders (the "Anemone Sanction Brief").

 In opposition to Y.J. and Kimm's appeals from the two sanction orders, Galen submitted: Appellee Galen, Inc.'s Responsive Brief on Issue of Sanctions (the "Galen Sanction Brief").

 The Record on Appeal contains twenty-six documents pertaining to these appeals. References to these documents will be as follows: [document name] at [page of document].

shareholder of Y.J., and her then husband Yoo Joon Son ("Yoo Son"). *See* Promissory Note, attached as Exhibit 7 to Kyung Son's Declaration in Opposition to Anemone's Motion for Sanctions and for Reconsideration (the "Son Decl."), included in the Record on Appeal.

Kyung Son states that, in late 1993, it became apparent the sales volume of the Flower Shop did not approach the volume that had been represented to her by Anemone. *See* Son Decl., ¶ 4. Kyung Son contends that, prior to the sale, Anemone had represented the Flower Shop generated $500,000 per year in sales and had more than 2,000 regular customers. *See id.,* ¶ 3. Kyung Son contends the Flower Shop, even after significant capital infusions, generated less than $300,000 per year in sales. *See id.,* ¶ 4. In addition, Kyung Son contends only a limited number of the 2,000 customers were active customers of the Flower Shop. *See id.,* ¶ 5.

### B. *State Court Action*

In January 1994, Y.J. commenced an action (the "State Court Action") in the Superior Court of New Jersey (the "Superior Court"), alleging fraud in the inducement, breach of agreement, conversion and conspiracy. *See* complaint in State Court Action (the "State Court Complaint"), ¶¶ 46–61, attached as Exhibit 1 to Son Decl. The State Court Action stemmed from Anemone's alleged misrepresentations regarding the sales volume and the number of customers of the Flower Shop. *See* Y.J. Brief at 6; Anemone Brief at 4. In response to the State Court Complaint, Anemone filed a counterclaim and a third-party claim against Kyung Son and Yoo Son based upon the Promissory Note. *See* Y.J. Brief at 6.

Upon commencing the State Court Action, Kimm proposed placing subsequent mortgage payments, due under the Promissory Note, into an escrow account (the "Escrow Account"), pending the resolution of the State Court Action. *See* Order to Show Cause for Preliminary Injunction with Temporary Restraints (the "First State Court Order to Show Cause"), attached as Exhibit 2 to the Son Decl. Anemone, however, took the position that payment of the mortgage payments into the Escrow Account constituted a default of the Promissory Note and threatened to proceed with foreclosure. *See* Y.J. Brief at 6. In response, Y.J. applied to the Superior Court for a preliminary injunction with a temporary restraining order. *See* First State Court Order to Show Cause.

On 4 April 1994, the Superior Court issued a consent order (the "Consent Order") permitting Y.J. to make all further payments owed under the Promissory Note into the Escrow Account. *See* Y.J. Brief at 6. The Consent Order effected the withdrawal of the First State Court Order to Show Cause and ordered that Anemone could not exercise any of its rights under the Promissory Note, including foreclosure, without a further order of the Superior Court. *See* Consent Order, attached as Exhibit 3 to the Son Decl. Subsequently, Y.J. deposited payments due under the Promissory Note into the Escrow Account, totaling approximately $79,000. *See* transcript of Bankruptcy Court hearing, held 9 January 1997 (the "9 January 1997 Tr."), at 6. The Escrow Account is under Kimm's control. *See id.*

In August 1996, Anemone notified Y.J. of its intention to seek legal fees against Y.J. in the State Court Action. *See* letter of David S. Hartstein, Esq. ("Hartstein"), dated 1 August 1996 (the "1 August 1996 Hartstein Letter"), attached as Exhibit 6 to Son Decl. Anemone's claim for attorney fees was based upon terms of the Promissory Note.[2] Ane-

---

**2.** The Promissory Note provides, in pertinent part:

In the event of acceleration pursuant to the terms of the foregoing clause (entitled "Default") and in the event hat the Y.J. is unable to satisfy the accelerated sum within ten (10) days if written notice thereof, thereafter Anemone, Inc., its successors or assigns, or the holder of said note shall have the right to immediately Institute suit for the collection of the accelerat-

ed sum and shall have the right to retake the operation of the business being transferred hereunder. Further, the Seller or the Holder of said Note shall have the right to immediately resume operation of the said business free of any claims to any right, title, or interest therein by the Borrower, and the *Borrower shall be responsible for reasonable attorney's fees for the foregoing.*

Promissory Note (emphasis added).

mone also provided Y.J. notice of its intention to foreclose on the Mortgage. *See id.*

On 6 August 1996, Y.J. responded to the 1 August 1996 Hartstein Letter, reminding Hartstein of the Consent Order and asserting that, because the payments were being made into the Escrow Account, there was no default which would expose Y.J. to legal fees. *See* Y.J. Brief at 8.

In September 1996, Anemone filed a motion in the State Court Action to terminate the Escrow Account and allow Anemone to proceed with its action to foreclose on the Mortgage, pursuant to the terms of the Promissory Note (the "Anemone Escrow Termination Motion"). *See* Y.J. Brief at 9. The Anemone Escrow Termination Motion was granted; on 4 December 1996, the Bergen County Sheriff served Y.J. with a foreclosure complaint. *See id.*

In December 1996, Y.J. entered into a contract (the "Sales Agreement") to sell the Flower Shop to Galen for $220,000, $150,000 paid up front and $70,000 by corporate promissory note, payable over two years. *See* Son Decl., ¶ 19. After Y.J. entered into the Sales Agreement, Kimm informed Anemone of Y.J.'s intention to sell the Flower Shop and deposit the balance of the payments due under the Promissory Note into the Escrow Account. *See* letter of Michael S. Kimm, Esq., dated 5 December 1996 (the "5 December 1996 Kimm Letter"), attached as Exhibit 9 to the Son Decl. Kimm informed Anemone that Y.J. intended

> to make an immediate application to the [Superior] Court to enforce the 2 February 1994 escrow stipulation by an injunction, so as to accomplish the impending sale. *If that somehow does not succeed, plaintiff may have no choice but to seek reorganization in bankruptcy court. As you presumably know, section 363(f) of the Bankruptcy Code authorizes a debtor to sell substantially all of its assets free and clear of any liens. In that situation, defendants would be relegated to the guarantee, which may or may not result in any recov-*

*ery. . . .* [I]f the defendants frustrate the sale, it will obviously be impossible for plaintiff to mitigate damages . . . . [P]lease advise me in writing by the close of business today whether your clients will agree to discharge the UCC–1 filed against the assets of plaintiff's business . . . .

5 December 1996 Kimm Letter (emphasis added).

Anemone, however, refused to issue the necessary termination statement to vacate its security interest in the Flower Shop. *See* transcript of Superior Court Hearing (the "Superior Court Hearing Tr."), held 23 December 1996, attached as Exhibit B to Anemone Brief, at unnumbered page 3.[3] On 7 December 1996, Y.J. applied for an order to show cause in the Superior Court (the "Second State Court Order to Show Cause") seeking an order allowing the sale of the Flower Shop to Galen to proceed with the unpaid Promissory Note balance, owed Anemone, being paid into the Escrow Account. *See* Y.J. Brief at 12. The Superior Court denied the Second State Court Order to Show Cause, without prejudice. *See id.*

On 17 December 1996, Y.J. again applied for an order to show cause in the superior court (the "Third State Court Order to Show Cause") to compel issuance of a termination statement in exchange for payment directly to Anemone of the balance due. *See* Y.J. Brief at 12. On 23 December 1996, in response to the Third State Court Order to Show Cause, the Superior Court ordered that Y.J. pay the balance of the money owed under the Promissory Note directly to Anemone. *See* State Court Order (the "State Court Order"), dated 3 January 1997, attached as Exhibit 11 to the Son Decl. The Superior Court also ordered Y.J. to release the money held in the Escrow Account to Anemone. *See* Son Decl., ¶ 28. Significantly, the Superior Court ordered that $30,000 of the proceeds of the sale be placed in escrow to protect Anemone's claim for attorney fees.[4] *See id.;* State Court Order, ¶ 4.

---

3. The page numbers of the portions of the Superior Court Transcript submitted by Anemone are obscured.

4. Anemone's claims for attorney fees are based upon the terms of the Promissory Note.

On 24 December 1996, Y.J. filed the Petition. *See* Petition, attached as Exhibit 12 to the Son Decl.

As of September 1996, all discovery in the State Court Action was concluded. *See* Y.J. Brief at 7. The trial date for the State Court Action was set for 11 February 1997. *See* 9 January 1997 Tr. at 12. The trial date, however, has since been adjourned and the trial has not been held.

## C. *The Bankruptcy Action*

As indicated, Y.J. filed the Petition on 24 December 1996. *See* Petition. This was only one day after the Superior Court, in response to the Third State Court Order to Show Cause, authorized the sale of the Flower Shop, ordering that Y.J. pay the balance owed under the Promissory Note directly to Anemone and put $30,000 in to escrow to protect Anemone's claim for legal fees. *See* transcript of Bankruptcy Court hearing, held 16 January 1997 (the "16 January 1997 Tr."), at 23.

Along with the Petition, Y.J. filed an order to show cause (the "Bankruptcy Order to Show Cause") seeking an order approving the sale of the Flower Shop to Galen and asking the Bankruptcy Court to oversee the sale, pursuant to 11 U.S.C. § 363(f) ("Section 363(f)") of the Bankruptcy Code.[5] *See* 9 January 1997 Tr. at 28.

On 9 January 1997, Bankruptcy Judge Gambardella declined to order a Section 363(f) sale of the Flower Shop to Galen. *See* 9 January 1997 Tr. at 36. In addition, Bankruptcy Judge Gambardella, *sua sponte*, appointed a Chapter 11 trustee for Y.J. *See id.* at 38.

As indicated, Anemone responded to the filing of the Petition with the Anemone Motion to Dismiss, arguing the Petition had

been filed in bad faith. On 16 January 1997, argument was heard on the Anemone Motion to Dismiss. *See* 16 January 1997 Tr. at 23. Bankruptcy Judge Gambardella granted the Anemone Motion to Dismiss, holding the Petition had been brought in bad faith. *See id.* at 28. Bankruptcy Judge Gambardella specifically held Y.J. had filed the Petition in an attempt to forum shop, relitigate a decision that had already been decided by the State Court and as a litigation tactic. *See id.* at 27. In addition to dismissing the Petition, Bankruptcy Judge Gambardella granted leave to Anemone to file the Anemone Sanction Motion. *See id.* at 29.

Y.J. subsequently filed the Y.J. Reconsideration Motion. *See* Bankruptcy Court transcript of hearing (the "Reconsideration Hearing"), held 10 March 1997 (the "10 March 1997 Hearing Tr."), at 15. On 10 March 1997, Bankruptcy Judge Gambardella heard argument on the Y.J. Reconsideration Motion. *See id.* at 15. Bankruptcy Judge Gambardella concluded there was no need to modify her 16 January 1997 ruling because Y.J. offered no new facts or legal grounds requiring amendment of the prior decision. *See id.* at 15.

At the Reconsideration Hearing, Bankruptcy Judge Gambardella also heard argument on the Anemone Sanction Motion. *See* 10 March 1997 Tr. at 23. Bankruptcy Judge Gambardella awarded $4,788.80 to Anemone, pursuant to Bankruptcy Rule 9011.[6] *See id.* As indicated, the Anemone Sanction Award was imposed against Y.J. and Kimm, jointly and severally.

On 22 April 1997, Bankruptcy Judge Gambardella heard argument on Galen's motion for sanctions and awarded Galen $1,980. *See* transcript of hearing (the "22 April 1997 Hearing"), held 22 April 1997 (the "22 April

---

**5.** Section 363(f) provides:

The trustee may sell property ... free and clear of any interest in such property of an entity other than the estate, only if-
1. applicable nonbankruptcy law permits sale of such property free and clear of such interest;
2. such entity consents;
3. such interest is a lien and the price at which such property is sold is greater than

the aggregate value of all liens on such property;
4. such interest is in bona fide dispute; or
5. such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

*Id.*

**6.** The Court cited *Cinema Service Corp. v. Edbee Corp.*, 774 F.2d 584 (3d Cir.1985) as grounds for imposing sanctions under Bankruptcy Rule 9011.

1997 Tr."), at 16.[7] As indicated, the Galen Sanction Award, like the Anemone Sanction Award, was imposed against Y.J. and Kimm jointly and severally. Bankruptcy Judge Gambardella allowed an award only for Galen's attorney fees incurred directly as a result of Y.J.'s bad faith filing of the petition, specifically for the time expended by counsel reviewing pleadings and attending Bankruptcy Court proceedings. *See id.* at 12. Bankruptcy Judge Gambardella specifically noted that a request for sanctions must not be allowed to serve as a fee shifting device. *See id.* at 5.

Subsequent to the dismissal of the Petition, Y.J. applied for a *writ of mandamus* to the Circuit. *See* order denying *writ of mandamus,* dated 26 March 1997. Appellants also filed the instant appeals. On 26 March 1997, the Circuit denied Y.J.'s application for a *writ of mandamus. See id.*

*Discussion*

### I. *Standard of Review*

The standard of review applied by a district court when reviewing the ruling of a bankruptcy court is determined by the nature of the issues presented on appeal. The factual determinations of a bankruptcy court are not to be set aside unless they are "clearly erroneous." *See* Bankruptcy Rule 8013; *Chemetron Corp. v. Jones,* 72 F.3d 341, 345 (3d Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1424, 134 L.Ed.2d 548 (1996); *In re Indian Palms Associates, Ltd.,* 61 F.3d 197, 203 (3d Cir.1995); *In re Siciliano,* 13 F.3d 748, 750 (3d Cir.1994) (citing *Meridian Bank v. Alten,* 958 F.2d 1226, 1229 (3d Cir.1992)); *J.P. Fyfe, Inc. v. Bradco Supply Corp.,* 891 F.2d 66, 69 (3d Cir.1989); *In re Morrissey,* 717 F.2d 100, 104 (3d Cir.1983); *In re Rosen,* 208 B.R. 345, 348 (D.N.J.1997); *In re Continental Airlines,* 150 B.R. 334, 336 (D.Del. 1993); *Mellon Bank, N.A. v. Makoroff,* 153 B.R. 155, 157 (W.D.Pa.1993).

**7.** Kimm failed to appear at the 22 April 1997 Hearing. *See* 22 April 1997 Tr. At 8.

**8.** Y.J. argues Bankruptcy Judge Gambardella committed errors that were clearly erroneous as to the factual finding that the Petition had been filed in bad faith. *See* Y.J. Brief at 1. Y.J. argues that abuse of discretion is the proper standard of

■ Whether a bankruptcy case has been commenced in bad faith is a factual issue and, accordingly, bad faith determinations are reviewed under the clearly erroneous standard. *See In re Brown,* 951 F.2d 564, 567 (3d Cir.1991); *Carolin Corp. v. Miller,* 886 F.2d 693, 698 (4th Cir.1989); *In re Chisum,* 847 F.2d 597, 600 (9th Cir.), *cert. denied* 488 U.S. 892, 109 S.Ct. 228, 102 L.Ed.2d 218 (1988).

■ Legal conclusions of a bankruptcy court, are subject to *de novo* or plenary review. *See J.P. Fyfe,* 891 F.2d at 69; *Brown v. Pennsylvania State Employees Credit Union,* 851 F.2d 81, 84 (3d Cir.1988); *In re Continental Airlines,* 150 B.R. at 336; *Mellon Bank,* 153 B.R. at 157.[8] The exercise of discretion by the bankruptcy court is given conclusive effect unless such an exercise constitutes an abuse of discretion. *See In re Vertientes, Ltd.,* 845 F.2d 57, 59 (3d Cir. 1988).

### II. *The Bankruptcy Court's Bad Faith Dismissal*

#### 1. *Cause for Dismissal of a Chapter 11 Petition*

Bankruptcy Judge Gambardella dismissed the Petition pursuant to 11 U.S.C. § 1112(b) ("Section 1112(b)"). Section 1112(b) provides, in pertinent part:

> [O]n request of a party of interest ... and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title *or may dismiss a case* under this chapter, whichever is in the best interest of creditors and the estate, for cause, *including-*
>
> 1. continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation;
> 2. inability to effectuate a plan;
> 3. unreasonable delay by the debtor that is prejudicial to creditors;

review of the legal conclusions of Bankruptcy Judge Gambardella. *See id.* at 2 (citing *In re Brown,* 951 F.2d 564). As indicated, the legal conclusions of Bankruptcy Judge Gambardella are subject to *de novo* or plenary review; the factual findings are reviewed for clear error.

4. failure to propose a plan under section 1121 of this title within any time fixed by the court;

5. denial of confirmation of every proposed plan and denial of a request made for additional time for filing another plan or modification of a plan;

6. revocation of an order of confirmation under section 1144 of this title, and denial of confirmation of another plan or a modified plan under section 1129 of this title;

7. inability to effectuate substantial consummation of a confirmed plan;

8. material default by the debtor with respect to a confirmed plan;

9. termination of a plan by reason of the occurrence of a condition specified in the plan; or

10. nonpayment of any fees or charges required under chapter 123 of title 28.

11 U.S.C. § 1112(b) (emphasis added).

■ The list of standards for dismissal or conversion of a Chapter 11 petition, set forth in Section 1112(b), is non-exhaustive. *See Brown,* 951 F.2d at 572. The legislative history of Section 1112(b) explains

subsection (b) gives wide discretion to the court to make an appropriate disposition of the case *sua sponte* or upon motion of a party in interest, or the court is permitted to convert a reorganization case to a liquidation case or to dismiss the case, whichever is in the best interest of creditors and the estate, but only for cause. Cause may include ... [the ten factors listed in Section 1112(b) ]. *This list is not exhaustive.* The court will be able to consider other factors as they arise, and to use its equitable powers to reach appropriate result in individual cases.

11 U.S.C. § 1112, Revision Notes and Legislature Reports 1978 Acts (emphasis added).

■ In addition to reasons enumerated in Section 1112(b), a bankruptcy court may also dismiss a Chapter 11 petition where it determines the petition has been filed in bad faith. *See In re Trident Associates Ltd. Partnership,* 52 F.3d 127, 131 (6th Cir.1995), *cert. denied,* — U.S. ——, 116 S.Ct. 188, 133 L.Ed.2d 125 (1995); *In re Marsch,* 36 F.3d 825, 828 (9th Cir.1994); *In re Woodbrook Associates,* 19 F.3d 312 (7th Cir.1994); *In re Humble Place Joint Venture,* 936 F.2d 814, 816–17 (5th Cir.1991); *Carolin,* 886 F.2d at 698; *In re Phoenix Piccadilly, Ltd.,* 849 F.2d 1393, 1395 (11th Cir.1988); *In re Natural Land Corp.,* 825 F.2d 296, 298 (11th Cir. 1987); *In re Little Creek Development Co.,* 779 F.2d 1068, 1071 (5th Cir.1986); *In re Winshall Settlor's Trust,* 758 F.2d 1136, 1137 (6th Cir.1985); *In re Albany Partners, Ltd.,* 749 F.2d 670, 674 (11th Cir.1984); *see also Brown,* 951 F.2d at 572 (recognizing good faith requirement but finding under the particular facts of the case, bad faith was not established as a matter of law); *In re Ravick Corp.,* 106 B.R. 834, 842 (Bkrtcy.D.N.J.1989) (Dismissal of a Chapter 11 case under Section 1112(b) is appropriate where the case was not filed to achieve a valid, legitimate purpose of rehabilitative provisions of Chapter 11). Even in the absence of express statutory authorization, the requirement of good faith is an implicit requirement in the filing and maintenance of a Chapter 11 bankruptcy case. *See Carolin,* 886 F.2d at 698 (finding implicit requirement of good faith). "[E]very bankruptcy statute since 1898 has incorporated literally, or by judicial interpretation, a standard of good faith for the commencement, prosecution and confirmation of bankruptcy proceedings." *Little Creek,* 779 F.2d at 1071.

### 2. The Bad Faith Determination

■ "Generally the facts surrounding good faith will be determined by circumstantial evidence. It is unlikely that a debtor will ever acknowledge its own bad faith; therefore, one will reach conclusions about the party's intent from the totality of the circumstances surrounding the filing of the case." *In re Roxy Real Estate Co., Inc.,* 170 B.R. 571, 573 (Bkrtcy.E.D.Pa.1993); *accord In re Cohoes Indus. Terminal, Inc.,* 931 F.2d 222, 227 (2d Cir.1991) (Bad faith should be determined only upon considering the totality of the circumstances surrounding the filing.).

■ Whether a debtor has filed its bankruptcy petition in good faith

depends largely upon the bankruptcy court's on-the-spot evaluation of the debtor's financial condition, motives and the local financial realities. Findings of lack of good faith ... have been predicated on certain recurring but non-exclusive patterns, and they are based on a conglomerate of factors rather than any single datum.

*Little Creek*, 779 F.2d at 1072.

The following factors have been recognized as evidence of a bad faith filing:

(i) The Debtor has only one asset, the Property, in which it does not hold legal title

(ii) The Debtor has few unsecured creditors whose claims are small in relation to the claims of the Secured Creditors;

(iii) The Debtor has few employees;

(iv) The Property is the subject of a foreclosure action as a result of arrearages on the debt;

(v) The Debtor's financial problems involve essentially a dispute between the Debtor and the secured creditors which can be resolved in the State Court Action; and

(vi) The timing of the Debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the Debtor's secured creditor to enforce their rights.

*Phoenix Piccadilly*, 849 F.2d at 1394–95.

In general, a court may dismiss a bankruptcy petition for a lack of good faith in order to prevent abuse of the Chapter 11 process or in response to egregious misconduct that is incompatible with the functioning of the bankruptcy system. *See Carolin*, 886 F.2d at 702. Courts apply equitable principles in making this determination. *See id.* at 700. These principles may include preventing a debtor's intended abuse of the judicial process and the purposes of the Chapter 11's

reorganization provision. *Cohoes*, 931 F.2d at 227.

In the instant case, Bankruptcy Judge Gambardella cited *Ravick*, 106 B.R. 834, as support for dismissal of a Chapter 11 petition for bad faith when a party has not filed bankruptcy to achieve a valid, legitimate purpose of rehabilitate provisions of Chapter 11 but for other purposes. *See* 106 B.R. at 842–43. Bankruptcy Judge Gambardella also cited *Little Creek* which held that a court should consider several factors in determining bad faith, including the extent of the debtor's assets, whether there are any employees, whether there is any cash flow, whether there are any unsecured creditors, whether the property is posted for foreclosure because of arrearages on debt and whether the debtor is unsuccessful in State Court. *See* 779 F.2d at 1073. The absence of any likelihood of rehabilitation has been considered grounds for bad faith dismissal. *See id.* "The more objectively clear it is that the debtor cannot reorganize, it is concomitantly more difficult to conclude that the debtor's subjective belief in its ability to reorganize is in good faith." *Roxy*, 170 B.R. at 573.

At the 16 January 1997 Hearing, Y.J.'s counsel, Bruce H. Levitt, Esq. ("Levitt") informed the Bankruptcy Court there were sufficient monies available to pay 100 percent to all creditors, both secured and unsecured.[9] *See* 16 January 1997 Hearing at 14.

Y.J.'s only substantive asset is the Flower Shop. *See* Petition. At the time Y.J. filed the Petition, it no longer controlled the Flower Shop, having turned the Flower Shop over to Galen.[10] *See* Y.J. Brief at 20. Accordingly, the time the Petition was filed, Y.J. was no longer operating the Flower Shop. *See id.*

As indicated, by the Bankruptcy Order to Show Cause, filed with the Petition, Y.J. sought an order approving the sale of the Flower Shop, its only asset, to Galen. As indicated, the sale of the Flower Shop was

---

**9.** Kimm filed the Petition on behalf of Y.J. Anemone subsequently argued Kimm had a conflict because he purported to represent Y.J. and Kyung Son, Y.J.'s largest unsecured debtor. After this issue was raised, Y.J. retained Levitt to

represent its interests in the bankruptcy proceedings. *See* Y.J. Brief at 19.

**10.** Y.J. turned control of the Flower Shop over to Galen, prior to the anticipated closing.

the subject of two previous orders to show cause, filed by Y.J. in the Superior Court. Significantly, the day before the Petition was filed, the Superior Court filed an order approving the sale, but requiring that $30,000 be placed in escrow to secure Anemone's claim for attorney fees.

The Bankruptcy Court held that Y.J. "had, in essence, forum shopped not being satisfied with the results of the action that was before the Superior Court [and sought] a second bite of the apple." *See* 22 April 1997 Hearing Tr. at 7. The conclusion that Y.J. was forum shopping is buttressed by Levitt's statement that Y.J. filed the Petition because it "did not feel it was getting the shake it deserved in state court." *See* 10 March 1997 Hearing Tr. at 9. The fact that Y.J. was not in possession of the Flower Shop, anticipated a one hundred percent disposition to its creditors, with the exception of Kyung Son, and immediately moved for an order approving the sale of the Flower Shop, its only asset, are further indications of Y.J.'s bad faith.

Y.J. argues the Bankruptcy Court erred in not considering the feasibility of its reorganization plan. *See* Y.J. Brief at 38–39. Y.J. cites *Brown*, 951 F.2d 564, for support. This argument is without merit and Y.J.'s reliance upon *Brown* is misplaced.

*Brown* is distinguishable from the instant case. In *Brown*, a creditor, the First Jersey National Bank (the "Bank"), moved to dismiss debtor Rosemary Brown's ("Brown") Chapter 11 petition as having been filed in bad faith. *See Brown*, 951 F.2d at 566. The bankruptcy court denied the Bank's motion to dismiss for bad faith. *See id.* On appeal, the district court considered the denial of the Bank's motion to be interlocutory and declined to consider the merits. *See id.* at 567. The Circuit reversed, concluding the bankruptcy judge's determination was final and remanded the case to the district court. *See id.* at 566.

On remand, the district court reversed the bankruptcy court ruling, holding the "record [did] not support a finding that [Brown] had a reasonable likelihood of rehabilitation," and dismissed the bankruptcy case. *Brown*, 951 F.2d at 567. The district court also held, in the alternative, that Brown had filed the petition in bad faith. *See id.*

The Circuit vacated the district court's order of dismissal and remanded the case because it found the record contained insufficient findings and evidence to justify dismissal of Brown's Chapter 11 petition on grounds of unlikelihood of rehabilitation or bad faith. *See Brown*, 951 F.2d at 564–65. The Circuit held "the evidence ... of bad faith was not strong enough to enable us to say that it was established as a matter of law." *Id.* at 572. The Circuit similarly held the evidence of Brown's inability to reorganize was not certain enough to warrant dismissal. *See id.*

Y.J. argues *Brown* is dispositive because it mandates that courts take ample time to consider reorganization plans. *See* Y.J. Brief at 33. This argument is without merit. The Circuit's decision in *Brown* that two months was an inadequate amount of time for consideration of Brown's reorganization plan was a fact specific decision, limited to the particular facts of the *Brown* case. In the instant case, Bankruptcy Judge Gambardella did not need to consider Y.J.'s plans for reorganization because Y.J. had moved for the court approve the sale of its only asset, leaving nothing to reorganize. In short Y.J.'s intent, as evidenced in the Bankruptcy Order to Show Cause, was not to reorganize but rather to sell its only asset.

In the instant case, as indicated, Y.J. filed the Petition along with moving papers asking the court to authorize the sale of Y.J.'s sole asset, the Flower Shop. At the time the Petition was filed, Y.J. was no longer in possession of the Flower Shop, because it had been turned over to Galen. Accordingly, Y.J.'s argument the Bankruptcy Court did not take ample time to consider its reorganization plan is without merit.

Y.J.'s argument that its reorganization plan was feasible does not provide a ground for reversal of the Dismissal. "The taint of a petition filed in bad faith must naturally extend to subsequent reorganization proposal; thus, any proposal submitted by a debtor who filed his petition in bad faith would fail to meet section 1129's good faith requirement." *Natural Land*, 825 F.2d at 298. A

court need not allow a debtor to formulate a reorganization plan if doing so constitutes a perversion of the reorganization law and the court may terminate the proceedings to prevent the abuse. *See Phoenix Piccadilly*, 849 F.2d at 1395 (if bad faith is present, dismissal is warranted even if the debtor might otherwise have proceeded to formulate or confirm a plan). "The possibility of successful reorganization cannot transform a bad faith filing into one undertaken in good faith." *Id.*

Bankruptcy Judge Gambardella's determination that Y.J.'s purpose in filing the Petition was simply to secure the sale of the Flower Shop on better terms than those given by the Superior Court is also supported in the record. As indicated, the bad faith determination requires a consideration of the totality of the circumstances. *See Trident*, 52 F.3d at 131. The dismissal of a bankruptcy petition is appropriate if the debtor has filed a petition merely as a forum shopping device to avoid having to appeal a state court decision. *See In re Walter*, 108 B.R. 244, 250 (Bkrtcy.C.D.Cal.1989). The conclusion Y.J. was attempting to forum shop is evidenced by the statements of Levitt:

> In this situation it is a State Court order that says take a sum of money that may belong to other people and give it to this creditor. With absolutely no guarantee if we are successful, ultimately, on the fraud action we will get the money back ... this is why we file bankruptcy petitions.

16 January 1997 Hearing Tr. at 12. As indicated, moreover, Levitt stated at the 10 March 1997 Hearing that the Petition was filed because Kimm and Y.J. felt "they really weren't getting the shake they were supposed to get in the state court." 10 March 1997 Hearing Tr. at 9.

As indicated, the Petition was filed one day after the State Court Order, which approved the sale of the Flower Shop, but required Y.J. to deposit $30,000 into escrow to protect Anemone's claim for legal fees. The timing of the Petition's filing is evidence of Appellants' bad faith. *See Trident*, 52 F.3d at 131 (chapter 11 petition, filed on eve of mortgage

foreclosure is evidence of bad faith particularly when the debtor has no ongoing business or employees). In the instant case, at the time the Petition was filed, Y.J. had turned over the Flower Shop to Galen and was "no longer doing business" 16 January 1997 Hearing Tr. at 14.

Y.J. argues that, even if it filed the Petition in bad faith, its case should be reinstated because the good faith doctrine either does not apply to Chapter 11 cases or is unconstitutionally vague and therefore invalid.[11] Y.J. Brief at 24. Y.J. relies almost entirely upon *In re Victoria Ltd. Partnership*, 187 B.R. 54 (Bkrtcy.D. Mass 1995), for support of this argument. Y.J. Brief at 25.

In *Victoria*, the debtor, Victoria Ltd. Partnership ("Victoria"), filed for Chapter 11 bankruptcy protection one hour prior to the scheduled foreclosure sale of its only asset. *See Victoria*, 187 B.R. at 55. The secured creditor responded to the bankruptcy filing by moving for dismissal of Victoria's bankruptcy petition on ground that it had been filed in bad faith. *See id.* at 54–55. The *Victoria* court denied the creditor's motion, *see id*, at 54, holding the good faith doctrine conflicted with the Bankruptcy Code, its legislative history, Supreme Court precedent and logic. *See id.* at 59–62.

*Victoria* is a District of Massachusetts bankruptcy court decision and is apparently the only decision that has held the good faith doctrine to be invalid. All of the circuit court decisions that have addressed the issue of the good faith doctrine have recognized a requirement of good faith in the filing of a Chapter 11 petition. *See Trident*, 52 F.3d 127; *Marsch*, 36 F.3d 825; *Brown*, 951 F.2d at 572; *Humble Place*, 936 F.2d at 816–17; *Cohoes*, 931 F.2d at 227; *Carolin Corp. v. Miller*, 886 F.2d at 698; *Phoenix Piccadilly.*, 849 F.2d at 1395; *Natural Land*, 825 F.2d at 298; *Little Creek*, 779 F.2d at 1071; *Winshall*, 758 F.2d at 1137; *Albany*, 749 F.2d at 674. *Victoria*, moreover, appears to be a policy driven attempt to protect single asset real estate corporations to which, according

---

11. Y.J. argues that Bankruptcy Judge Gambardella failed to make specific findings of bad faith.

This argument has no basis in the record.

to the *Victoria* court, the good faith doctrine has been a "death knell." 187 B.R. at 59.

The concerns expressed by the *Victoria* court are not at issue in the instant case. The Petition was dismissed because it was determined that Y.J. was simply forum shopping, not because it was a single asset debtor. As indicated, Y.J.'s intent, as expressed in the Bankruptcy Order to Show Cause, was not to reorganize, but rather to sell its only asset. The fact that the Bankruptcy Order to Show Cause was filed with the Petition, moreover, undercuts Y.J.'s argument that it legitimately sought a "breathing spell" from its creditors when it filed the Petition.

The good faith doctrine, as applied to the facts of the instant case, is consistent with Section 1112(b). Accordingly, Y.J.'s argument, based upon *Victoria*, is rejected. Y.J.'s conclusory argument that the good faith doctrine is unconstitutionally vague is similarly rejected.

### III. *Sanctions*

As indicated, Y.J. and Kimm appeal the Sanction Awards. For the reasons set forth below, the Sanction Awards are affirmed.

Bankruptcy Judge Gambardella imposed the sanctions pursuant to Bankruptcy Rule 9011. Bankruptcy Rule 9011 provides

[e]very petition, pleading, motion and other paper served or filed in a [bankruptcy] case ... on behalf of a party represented by an attorney, except a list, schedule, or statement, or amendments thereto, shall be signed by at least one attorney of record in the attorney's individual name, whose office address and telephone number shall be stated.... The signature of an attorney ... constitutes a certificate that the attorney ... has read the document; that to the best of the attorney's ... knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass, or to cause unnecessary delay, or needless increase in the cost of litigation or administration of the case.... *If a document is*

*signed in violation of this rule, the court on motion or on its own initiative, shall impose on the person who signed it, the represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including reasonable attorney's fee.*

*Id.* (emphasis added).

██ Bankruptcy Rule 9011 is analogous to Federal Rule of Civil Procedure 11 ("Rule 11"), containing "only such modifications as are appropriate in bankruptcy matters." *Cinema Serv.*, 774 F.2d at 585; *see also In re Case*, 937 F.2d 1014, 1022 (5th Cir.1991); *Cohoes*, 931 F.2d at 227. Accordingly, review of the bankruptcy court awards of Bankruptcy Rule 9011 sanctions are conducted under "the same standard applicable to an order of sanctions under Rule 11." *In re Akros Installations, Inc.*, 834 F.2d 1526, 1531 (9th Cir.1987). "As in Rule 11 cases, the imposition of sanctions is reviewed pursuant to Bankruptcy Rule 9011 using the abuse of discretion standard." *Cohoes*, 931 F.2d at 227; *see also Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 384, 110 S.Ct. 2447, 2449, 110 L.Ed.2d 359 (1990); *Mareno v. Rowe*, 910 F.2d 1043, 1047 (2d Cir.1990) ("Legal errors on the part of the [lower courts] will constitute an abuse of discretion."), *cert. denied*, 498 U.S. 1028, 111 S.Ct. 681, 112 L.Ed.2d 673 (1991).

The Circuit has adopted the abuse of discretion standard for reviewing Rule 11 sanctions. *See Napier v. Thirty or More Unidentified Federal Agents, Employees or Officers*, 855 F.2d 1080, 1092 (3d Cir.1988). In *Napier* the Circuit held "the district court has substantial discretion to determine the nature and extent of a sanction.... We review the district court's decision to levee sanctions for abuse of discretion." *Id.* at 1091; *see also Dura Sys. v. Rothbury Investments, Ltd.*, 886 F.2d 551, 555 (3d Cir.1989), *cert. denied*, 493 U.S. 1046, 110 S.Ct. 844, 107 L.Ed.2d 838 (1990) (same); *Doering v. Union County Bd. of Chosen Freeholders*, 857 F.2d 191, 195 (3d Cir.1988) ("this court has enunciat-

ed an 'abuse of discretion' standard for reviewing the initial decision to impose sanctions as well as the specific of fee awards...."); *Teamsters Local Union No. 430 v. Cement Express, Inc.*, 841 F.2d 66, 68 (3rd Cir.1988) ("review of imposition or denial of sanctions under Rule 11 is limited to determining whether the district court has abused its discretion."); *Luzadder v. Despatch Oven Co.*, 834 F.2d 355, 360 (3d Cir.1987), *cert. denied, sub. nom. Honeywell, Inc. v. Luzadder* 485 U.S. 1035, 108 S.Ct. 1595, 99 L.Ed.2d 909 (1988) (same).

 The Circuit has held that Rule 11 sanctions are warranted where an attorney or party has signed a pleading that results in an abuse of litigation or misuse of the court's process and in cases involving frivolous motions. *See Teamsters*, 841 F.2d at 68. Sanctions may be imposed where a party files an action for an improper purpose, such as harassment or undue delay. *See Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 484 (3d Cir.1987). Rule 11 sanctions, however, are not appropriate when a party's only fault was being on the losing end of a ruling or judgment on the merits. *Id.* at 483.

 As indicated, Bankruptcy Judge Gambardella's determination the Petition was filed in bad faith and for an improper purpose is supported in the record. The sanctions imposed, based upon the bad faith filing, were not an abuse of discretion. As indicated, Bankruptcy Judge Gambardella, recognized "sanctions should not be viewed as a fee shifting device since its goal is correction of litigation abuse." 22 April 1997 Hearing Tr. at 11. In awarding attorney fees to Anemone, Bankruptcy Judge Gambardella "limited its sanctions to ... reasonable counsel fees incurred in Anemone's filing of the motion to dismiss and obtaining a dismissal from the [Bankruptcy] Court." *Id.* Bankruptcy Judge Gambardella did not include "services that were outside that general definition (reasonable fees incurred in filing motion to dismiss and in obtaining dismissal)." *Id.*

Bankruptcy Judge Gambardella similarly limited the Galen Sanction Award. At the 22 April 1997 Hearing, Galen asked for $4,955 in legal fees. Bankruptcy Judge Gambardella rejected Galen's calculation of its legal fees and did not allow any legal fees that were not directly incurred as a result of costs Galen had incurred in participating in the bankruptcy hearings, which were calculated to be $1,980.00.

Determining the amount of sanctions, requires an evaluation of the reasonableness of the opposing attorney fees. *See Napier*, 855 F.2d at 1093. In *Napier*, the Circuit vacated an award of $17,163.26 for 117.8 hours in attorney time for preparing an opposition to a summary judgment motion. *See id.* at 1093. Remanding for further proceedings the court held

> *the calculation of the sanctions amount requires an inquiry by the court into both the reasonableness of the hourly rate and the reasonableness of the number of hours expended in this case* .... [T]he ... attorneys were guilty of overkill in their extensive briefing of this frivolous lawsuit.... [T]he Rule 11 movant has a duty to mitigate by using reasonable means to terminate the litigation and to prevent costs from becoming excessive.

*Id.* at 1093–94 (emphasis added).

As indicated, Bankruptcy Judge Gambardella awarded only those attorney fees which were incurred as a direct result of Y.J.'s bad faith filing. Furthermore, Bankruptcy Judge Gambardella disallowed $1,440 of Anemone's request for attorney fees and $2,975 of Galen's request. *See* 10 March 1997 Hearing Tr. at 22; 22 April 1997 Tr. at 4, 15. Considering that the value of the Flower Shop was greater than $200,000 and the circumstances surrounding the filing of the Petition, the amount awarded was reasonable.

 Appellants' argument Bankruptcy Judge Gambardella abused her discretion in not considering Appellants' ability to pay is without merit. A court imposing sanctions is required to consider the ability to pay of the sanctioned attorney or party. *See Doering*, 857 F.2d at 191. As will be discussed, however, Appellants did not raise this issue before the Bankruptcy Court and raise it on appeal only in the most conclusory fashion.

In *Doering,* the Circuit affirmed Rule 11 sanctions but vacated and remanded the $25,-000 award for consideration of equitable and mitigating factors, including the sanctioned attorney's ability to pay. *See* 857 F.2d 191. The *Doering* Court held:

> The deterrent effect of an award of attorney's fees depends on the extent of the sanctioned party's resources. But while a monetary sanction, such as attorney's fees, is clearly an acceptable choice of deterrent, courts must be careful not to impose monetary sanctions so great that they are punitive-or that they might even drive the sanctioned party out of practice.

*Doering,* 857 F.2d at 195–96.

In *Doering* the attorney for plaintiff was ordered to pay $25,000 for defense attorney fees, incurred as the result of the frivolous complaint. *See* 857 F.2d at 192. The attorney sanctioned in *Doering* specifically requested that the district court mitigate the sanction because of his inability to pay. *See id.* at 196. At argument, the sanctioned attorney brought his limited financial resources to the attention of the court. *See id.* at 196. In *Doering,* moreover, the district court "rejected the argument that the award should take into account ability to pay." *Id.* at 193; *see also Jones v. Pittsburgh Nat'l Corp.,* 899 F.2d 1350, 1359 (3d Cir.1990). In *Jones* the Circuit held that "a court is not free to dispose of a fee application without affording the party to be sanctioned an opportunity to make an appropriate showing of his ability to pay." *Jones,* 899 F.2d at 1359.

In the instant case, the sanctions were awarded after Appellants were given an opportunity to respond. Appellants filed opposition to the motions for sanctions and, as indicated, Appellants were provided the opportunity to be heard at the 10 March 1997 Hearing, regarding the Anemone Sanction Motion, and the 22 April 1997 Hearing, regarding the Galen Sanction Motion.[12] At no time did Kimm raise the issue of ability to

pay.[13] No evidence was submitted, moreover, that Appellants were unable to pay.

Appellants argue, for the first time on appeal, that Bankruptcy Judge Gambardella abused her discretion in not considering their ability to pay. Even on appeal, however, Appellants do not support their conclusory assertion. Kimm merely asserts he is a solo practitioner. *See* Sanction Reply Brief at 8.

Remand of the instant appeals to the Bankruptcy Court for consideration of Appellants' ability to pay is not warranted. The issue was not raised before the Bankruptcy Court and is raised only in the most conclusory fashion on appeal. The total amount of sanctions involved, moreover, is not excessive, particularly considering the tortured litigation history of the instant appeals.

Appellants also argue the sanctions are improper because the Bankruptcy Court did not have jurisdiction to award sanctions after it had dismissed the action. Y.J. Sanction Reply Brief at 9. This argument is without merit. A district court retains jurisdiction to entertain and decide a sanction motion after dismissal of a lawsuit by the sanctioned party. *Schering Corp. v. Vitarine Pharms., Inc.,* 889 F.2d 490, 494 (3d Cir.1989).

Appellants argue they had inadequate notice of appellees' motions for sanctions. Y.J. Sanction Brief at 18. This argument similarly is without merit.

Appellants were given notice of Anemone's intent to seek sanctions at the 16 January 1997 Hearing and were given the opportunity to, and did in fact, oppose the Anemone Motion for Sanctions. Sanctions were not imposed until the 10 March 1997 Hearing. Furthermore, Levitt appeared at the 10 March 1997 Hearing. *See* 10 March 1997 Hearing Tr. at 3.

Appellants argue Galen is not entitled to sanctions because Galen never argued the Petition was filed in bad faith until after the case was dismissed and Galen suffered no

12. As indicated, Kimm failed to appear at the 22 April 1997 Hearing.

13. In their declarations, filed in opposition to the Anemone Sanction Motion, Y.J. and Kimm for

the most part merely reargued Bankruptcy Judge Gambardella's bad faith finding; they do not address the issue of ability to pay factually or legally. *See* Son Decl. at 33; Kimm Decl at 5, 6.

loss in responding to the Petition. Appellants point to no authority for their argument that Galen should be precluded from moving for sanctions because it did not move to dismiss the Petition. Accordingly, this argument is rejected; Bankruptcy Judge Gambardella properly considered Galen's motion for sanctions.

### IV. *Dismissal of the Petition*

■ Sanctions, including an order preventing further filings by a party without permission of the court, are warranted where a party has engaged in a pattern of groundless and vexatious litigation. *See Chipps v. United States Dist. Ct. for the Middle Dist. of Pa.,* 882 F.2d 72, 73 (3d Cir.1989) (injunction must be related to the same subject matter as prior groundless litigation.); *see also Gagliardi v. McWilliams,* 834 F.2d 81, 83 (3d Cir.1987) (approving use of an injunction as Rule 11 sanction to prevent future vexatious litigation).

■ In the instant case, Bankruptcy Judge Gambardella dismissed the Petition "with prejudice" because it was filed in bad faith. Y.J. argues the "with prejudice" dismissal is a *"de facto* perpetual injunction" against Y.J. seeking any future relief in bankruptcy court. Y.J. Brief at 44. There is no support in the record for Y.J.'s interpretation of the Chapter 11 Dismissal. While a bankruptcy court may place restrictions upon the future filings of a party who has filed a bankruptcy petition in bad faith, the record indicates Bankruptcy Judge Gambardella did not consider and did not impose such limitations. Y.J.'s interpretation of the Chapter 11 Dismissal has no basis in the record; Y.J.'s right to seek relief in bankruptcy, assuming the relief is sought in good faith and based upon changed circumstances, is not impeded.

### Conclusion

For the reasons set forth above, the Chapter 11 Dismissal, the Anemone Sanction Award and the Galen Sanction Award are affirmed.